AMASA WORTHINGTON, Appellant, *v.* THE LONDON GUARANTEE AND ACCIDENT COMPANY, Respondent.

164    81
f 165   178

1. MUNICIPAL COURT OF THE CITY OF NEW YORK IS NOT A NEW LOCAL AND INFERIOR COURT — JURISDICTION OVER FOREIGN CORPORATIONS — CONSTITUTION, ART. 6, § 18.  The Municipal Court of the city of New York is a continuation, consolidation and reorganization of the District Courts of the old city of New York and the Justices' Courts in the first, second and third districts of the old city of Brooklyn under a new name, and is not a new local inferior court within section 18 of article 6 of the Constitution authorizing the legislature to establish inferior local courts, but prohibiting it from "hereafter" conferring upon any inferior local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under "this" article; and the provision of section 1364 of "the Greater New York charter," that such court shall have jurisdiction "of a foreign corporation having an office in the city of New York," does not violate such constitutional provision, but merely confers upon the Municipal Court the jurisdiction which had been exercised for many years by the local tribunals consolidated in that court.

2. SCOPE OF CONSTITUTIONAL LIMITATION.  Assuming that the Municipal Court of the city of New York is a new local court, the provision conferring upon it jurisdiction "of a foreign corporation having an office in the city of New York" would not violate section 18 of article 6 of the Constitution, since the limitation thereby imposed upon the power of the legislature to confer jurisdiction upon future inferior local courts relates to the jurisdiction as to subject-matter, and not as to territory, non-resident parties defendant or foreign corporations.

*Worthington* v. *London Guar. & Ac. Co.*, 47 App. Div. 609, reversed.

(Argued June 6, 1900 ; decided October 2, 1900.)

APPEAL, by permission, from an order and judgment of the Appellate Division of the Supreme Court in the first judicial department, entered respectively February 16 and March 3, 1900, affirming an order and judgment of the Appellate Term of the Supreme Court for said department, which reversed a judgment of the Municipal Court of the city of New York in favor of plaintiff for a sum of money due on contract.

The nature of the action, the question certified, and the facts, so far as material, are stated in the opinion.

11

*Robert L. Morrell* for appellant. The Municipal Court of the city of New York has jurisdiction in civil actions against a foreign corporation having an office in the city of New York. (L. 1897, ch. 378, § 1364; Const. N. Y. art. 6, § 18.) The Municipal Court of the city of New York as it exists in the borough of Manhattan is not a new local inferior court, but is a continuation of the District Courts of the city of New York. (*Matter of Schultes,* 33 App. Div. 524; *People ex rel.* v. *Porter,* 90 N. Y. 68; *Irwin* v. *M. S. Ry. Co.,* 38 App. Div. 253; L. 1897, ch. 378, § 1608.) Even if it should be held that the Municipal Court is a new local inferior court created subsequent to the Constitution of 1895, still that portion of the Greater New York charter giving it jurisdiction over foreign corporations and non-residents is constitutional and not in violation of section 18 of article 6 of the Constitution of 1895, because it was not the intention of the framers of the Constitution of 1895 to prohibit the legislature from creating a new local inferior court having at least the jurisdiction of a justice of the peace. (*Dodge Mfg. Co.* v. *N. S. C. Co.,* 44 App. Div. 603; *Luban* v. *Simonds,* 46 App. Div. 192; *Irwin* v. *M. S. Ry. Co.,* 38 App. Div. 261.) A foreign corporation is not "a person, not a resident of the county," within the meaning of section 14 of article 6 of the Constitution. (*Plimpton* v. *Bigelow,* 93 N. Y. 598.) Every reasonable method to reconcile the Municipal Court Act with the Constitution should be resorted to before the statute is declared unconstitutional. (*People ex rel.* v. *Bd. of Suprs.,* 147 N. Y. 1; Code Civ. Pro. § 3228.)

*Frederick Hulse* for respondent. The Municipal Court of the city of New York in which this action was brought had no jurisdiction of the defendent. (Const. of N. Y. art. 6, § 18; *Plimpton* v. *Bigelow,* 93 N. Y. 592; *Irwin* v. *M. S. Ry. Co.,* 38 App. Div. 253; *Matter of Schultes,* 33 App. Div. 524; *Tyroler* v. *Gummersbach,* 28 Misc. Rep. 151; *Scheich* v. *G. O. F. H. Assn.,* 29 Misc. Rep. 358; *McConlogue* v. *McCaffrey,* 29 Misc. Rep. 139; *McKenna* v. *F. Ins. Co.,* 28

Misc. Rep. 173 ; *Rieser* v. *Parker*, 27 Misc. Rep. 205 ; *Bristor* v. *Flaherty*, 30 Misc. Rep. 111 ; *S. G. Co.* v. *N. S. C. Co.*, 28 Misc. Rep. 577.)

BARTLETT, J. This action was commenced in the Municipal Court of the city of New York, borough of Manhattan, first judicial district, against the defendant, a foreign corporation, created by the laws of Great Britain, and having an office in the city of New York. The plaintiff sued to recover a sum of money alleged to be due on contract and recovered judgment. The Appellate Term reversed the judgment and the Appellate Division affirmed the order and judgment of reversal.

The only question discussed in the opinions of the appellate courts was that of jurisdiction, it being held that the Municipal Court of the city of New York had no jurisdiction of the defendant, notwithstanding the fact that " The Greater New York Charter" provides in express terms, in section 1364, that said court has jurisdiction " of a foreign corporation having an office in the city of New York," for the reason that this provision of the charter is violative of article VI, § 18, of the State Constitution, which provides that the legislature " shall not hereafter confer upon any inferior local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article."

The argument of the respondent is that the Municipal Court is a new, inferior, local court created by the charter, and, as the State Constitution (Art. VI, § 14) limits the jurisdiction of County Courts to residents of the county, the legislature was without power to confer jurisdiction as to defendants not residing within the limits of the present city of New York.

This view of the law has been approved by the two appellate tribunals, and a question is certified to this court by the Appellate Division reading as follows, viz. : " Has the Municipal Court of the city of New York jurisdiction to render judgment against the defendant in this cause ? "

This decision has such a serious effect on the business interests of a great city containing about three millions and a half of inhabitants, that the question may well be asked whether a situation is not presented where the familiar rule of construction may be applied most rigidly, that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to and reconciliation has been found impossible, the statute will be upheld. · (*People ex rel. Henderson* v. *Supervisors*, 147 N. Y. 1.)

To the charter, as to every statute, the presumption of constitutionality attaches; the burden rests upon the defendant to show it is unconstitutional.

It is well at the outset to recall the jurisdiction of inferior local courts, in the territory now embraced within the city of New York, prior to January 1st, 1898, when the greater city came into existence. The District Courts in the old city of New York, answering to Justices' Courts in the other portions of the state, had existed for nearly one hundred and fifty years, and under the Consolidation Act (§ 1283) had jurisdiction in civil actions for a limited amount of non-residents of the county and foreign corporations, provided they had an office in the city of New York. Within the limits of the old city of New York there was neither County Court nor justice of the peace.

In Brooklyn there existed courts known as Justices' Courts with non-resident jurisdiction, and in other portions of the territory now embraced within the greater city were justices of the peace and County Courts, the former having jurisdiction of defendants who were non-residents of the county and the latter confined to residents.

The old city of New York, as is well known, had a large number of non-residents who came within its limits every day to do business, and against whom numberless small claims were constantly arising in favor of residents. For time out of mind these claims had been collected in the District Courts

in the exercise of jurisdiction that greatly promoted the interests of those seeking to enforce these minor causes of action; but if the decision in the case at bar is to stand, these comparatively insignificant demands are to be litigated in the Supreme Court, and if under fifty dollars all remedy is cut off, as costs would not be recoverable in a court of record. (Code of Civ. Pro. § 3228, sub. 4.)

If this is the legal situation it is beyond legislative remedy, and must await the slow process of a constitutional amendment.

It is quite inconceivable that the legislature contemplated any such radical change, and its clear intention, in view of the growing needs of the greater city, was to continue in full force the jurisdiction over non-residents and foreign corporations as to minor claims.

It requires clear and unmistakable language to deprive the local courts of the city of New York of jurisdiction over causes of action originating within the territorial limits of the tribunal, and where the defendant, if a non-resident, is served within the boundaries of the city, or if a foreign corporation has a place of business therein. The task imposed upon the commissioners who drafted the charter of the greater city required them to unite into one great municipality the cities of New York and Brooklyn and a large number of contiguous cities, towns and villages. The student of the charter is constantly impressed with the fact that it is not a new enactment, but a continuation of the Consolidation Act of 1882 and its amendments as modified.

This principle of construction is made a part of the charter. (§ 1608.)

The general scheme of the charter was to continue in existence the old city of New York, and to a great extent its municipal and judicial machinery, and to unite with it the outlying territory, which aggregation on a day named would become the new city of New York.

This scheme being kept in mind, the details of the charter are rendered clear and harmonious.

The first step was a provision that the wards of the old city

of New York should be continued with their present boundaries and numbers and known as wards of the borough of Manhattan and the Bronx, respectively. (§ 1578.)

The provision was also made to continue the wards of the former city of Brooklyn as wards in the borough of Brooklyn. (§ 1577.)

The remaining territory which was to constitute the greater city was dealt with in a very different manner.

The five towns and all the incorporated villages within the county of Richmond were abolished and that territory became wards in the borough of Richmond in the new city. (§§ 1579, 1580.)

Certain towns and villages in the county of Queens were also abolished and the territory carved up into wards in the borough of Queens in the greater city. (§ 1581.)

This was followed by the provision that, upon the taking effect of the charter, all offices in these cities, villages, towns and school districts were abolished, except as otherwise provided. (§ 1615.) This swept out of existence with unimportant exceptions justices of the peace and all local courts.

The county of Richmond and a portion of the county of Queens came into the greater city without judicial machinery, except as provided by the new charter.

The old city of New York and the city of Brooklyn were possessed of local courts that were to be the basis of a system for the new city.

The matter of inferior local courts is dealt with in chapter XX of the charter.

The City Court of New York was continued (§ 1345), and the justices thereof were permitted to serve until the expiration of their respective terms. (§ 1346.)

From and after midnight of the thirty-first of January, 1898, the Justices' Courts and the office of justice of the peace in the cities of Brooklyn and Long Island City were abolished. (§ 1350.)

Section 1351 reads as follows: "On and after the first day of January, eighteen hundred and ninety-eight, the

district courts of the city of New York and the justices' courts of the first, second and third districts of the city of Brooklyn are hereby *continued, consolidated and reorganized under the name* of 'The Municipal Court of the City of New York,' which said court shall be a local civil court within the city of New York, as constituted by this act, and shall not be a court of record, or have any equity jurisdiction; but shall have the jurisdiction, powers, duties and organization hereinafter prescribed."

We are of opinion that the District Courts of the old city of New York and the Justices' Courts in the three districts named in the former city of Brooklyn were not abolished, but were continued, consolidated and reorganized under a new name.

This is so, not only because it is the plain reading of the statute, but for the reason that other provisions of the charter, to which we have referred and to which we shall presently refer, make it very clear.

It is argued that the new name and a few changes as to jurisdiction create a new court.

This contention cannot be sustained. It was never supposed when the name of the Marine Court of the city of New York was changed to that of the City Court of New York, a new court was created, even when accompanied by a few changes as to jurisdiction.

In the case at bar the District Court's jurisdiction as to money limit was $250.00, and as to territory the county of New York; to the continued, consolidated and reorganized courts, renamed the Municipal Court, is given a money limit of $500.00 and territorial jurisdiction coterminous with the greater city.

There are other slight changes in jurisdiction not important to notice at this time. If the District Courts and others were continued, as we have held, then no new court was created and the jurisdiction over a foreign corporation defendant, having a place of business in the city of New York, survived the consolidation and reorganization. It is an impressive fact

that a portion of the language of section 1351, which continued the old courts, is taken from article VI, § 18, of the State Constitution, which section it is argued was violative of its provisions. The section adopts the constitutional limitations, evidently by reason of excessive caution, which prohibit the creation of a court of record, or a court having equity jurisdiction.

It is thus made clear that the drafter of this section had these constitutional provisions before him when he drew it.

The charter commissioners having continued, consolidated and reorganized these courts under a new name, proceeded to provide for certain details consistent with the situation. The justices of the consolidated and reorganized courts were permitted to serve out the remainder of their terms as justices of the Municipal Court. (§ 1352.)

It then remained to provide the full number of justices for the Municipal Court and indicate the districts into which the greater city should be divided.

The borough of the Bronx was constituted two districts; the borough of Manhattan eleven; the borough of Brooklyn five; the borough of Queens three, and the borough of Richmond two, making a total of twenty-three districts. (§§ 1359 to 1363.) As the justices of the continued courts in office at the time of the consolidation were not sufficient in number to provide the reorganized court with a justice in each district, the mayor of the greater city was allowed to appoint the number necessary until December 31st, 1899. (§ 1352, sub. 4.)

No one is eligible to the office of justice unless he is a resident and elector in the district for which he shall be elected or appointed, thus making the continued, consolidated and reorganized court a substitute for the inferior local courts that had either been continued and consolidated, as in the case of the old cities of New York and Brooklyn, or abolished as was the fact in the remaining territory of the greater city. (§ 1353.)

The scheme of the charter, as thus briefly outlined, leads us to the conclusion that the Municipal Court of the city of New

York is not a new inferior local court, but old local tribunals continued, consolidated and reorganized under a new name and adapted to the needs of the greater city.

The decision of this case might very well rest on the point already discussed, that the Municipal Court of the city of New York is not a new local court; we are, however, of opinion that, assuming it to be such, there was no violation of article VI, § 18, of the State Constitution, when the legislature vested it with the same jurisdiction as to non-resident defendants and foreign corporations as had been for many years conferred on the District Courts in the city of New York, and to some extent on justices of the peace in other portions of the state.

This section of the Constitution reads as follows:

"Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article.    *    *    *"

The object of the framers of the Constitution seems very plain. The inferior local court could be created by the legislature, but certain limitations were placed upon this power. The court so created could not be a court of record, and was clothed with a jurisdiction which confined it to locality, that is, to county, city, town and village.

In *Landers* v. *Staten Island R. R. Co.* (53 N. Y. 450) this court had occasion to consider article 6, § 12, of the judiciary article of the Constitution, as amended in 1869, which continued the Superior Court of the city of New York, the Court of Common Pleas of the city and county of New York, the Superior Court of Buffalo, and the City Court of Brooklyn with the powers and jurisdiction they then had, "and such further civil and criminal jurisdiction as may be conferred by law."

It was held that legislation seeking to vest in the City

Court of Brooklyn jurisdiction of an action against a corporation for negligence as a common carrier, where the cause of action arose, the business of the corporation was transacted and its offices located outside of the city of Brooklyn, was unconstitutional, and that the words "further civil and criminal jurisdiction" had reference to the object of the jurisdiction and not to the territory or the persons of suitors.   (Vide *People ex rel. Townsend* v. *Porter*, 90 N. Y. 68, 75.)

When the judiciary article of the Constitution of 1894 was framed this matter of limitation as to locality had been fully construed by the courts and the convention deemed it wise to place an additional restraint upon the legislature when defining the powers of inferior local courts, to be exercised within their territorial limits, and, hence, we have the provision of the Constitution already quoted, which prohibits the legislature from granting "any greater jurisdiction in other respects than is conferred upon County Courts by or under this article."

It is very clear that the framers of the Constitution intended that not only should the inferior local court be strictly confined to its locality, but that the extent of its jurisdiction should be so limited that there would be no danger of powers being conferred by the legislature that might interfere with the Supreme Court in the exercise of its general jurisdiction throughout the state.

The local court was, therefore, to have no greater jurisdiction than the County Court.

What does this reasonably mean, in view of the manifest intention of the framers of the Constitution in drafting this limitation ?   It prohibits, in effect, the creation of an inferior local court possessing greater powers and dignity than the County Court.

The Constitution provides (Art. 6, § 14), in dealing with County Courts, that they shall be continued and exercise the powers and jurisdiction they then possessed, and the legislature was empowered to enlarge or restrict the jurisdiction provided it should not be so extended as to authorize an action

therein for the recovery of money only, in which the sum demanded exceeded two thousand dollars or in which any person not a resident of the county is a defendant.

This constitutional limitation as to amount discloses the intention to continue the County Court as an inferior local tribunal, notwithstanding it was a court of record. (Code of Civ. Pro. § 2, subd. 8.) The framers of the Constitution, in contemplating the creation of inferior local tribunals by the legislature and limiting its power, were not dealing with the jurisdiction of these future courts as to territory, non-resident parties defendant or foreign corporations, but as to subject-matter; they were not to have, in a general way, greater powers, importance and dignity than a County Court. In conferring upon the Municipal Court the jurisdiction of the District Courts of the city of New York and of justices of the peace elsewhere, which had been exercised for many years by these local tribunals, the legislature did not create a local court possessing greater powers, importance and dignity, within the general provisions of the Constitution we are considering, than the County Court.

The constitutionality of the charter of the city of New York in this respect is, therefore, maintainable upon both of the grounds discussed in this opinion.

We answer the question propounded to us in the affirmative.

The order and judgment of the Appellate Division appealed from should be reversed, and the order and judgment of the Appellate Term, first department, which were affirmed by the Appellate Division, should also be reversed, with costs to the plaintiff in Appellate Term, Appellate Division and in this court.

The record should be remitted to the Appellate Term, with the direction to hear and determine the appeal herein on the merits.

HAIGHT, J. I concur in the opinion of BARTLETT, J., in so far as he holds that the Municipal Court of the city of New York is a continuation of the District Court of the old city,

and is not a new local and inferior court within article 6, section 18, of the Constitution.

I am in doubt, however, with reference to his construction of that section. I am rather inclined to the view that that section of the Constitution has reference to local inferior courts established by the legislature in any part of the state and not necessarily restricted to cities, in which the power is limited to the jurisdiction conferred upon County Courts both as to persons and to subject-matter. But it appears to me that the Municipal Court of the city of New York, as it exists, is a District Court within the provisions of section 17, article 6, of the Constitution which provides that "justices of the peace and district court justices may be elected in the different cities of this state in such manner and *with such powers*, and have such terms respectively *as are or shall be prescribed* by law." Here we have a provision of the Constitution, relating to cities only, which makes provision for District Court justices, not only as to those existing, but also to such as *shall be* hereafter provided by law. As to such justices, they are to have "*such powers*" as the legislature shall provide, and there is no limitation whatever. It is true that the court in question is not called in the statute a District Court. Its name is the Municipal Court, but the change in name is immaterial. This view leaves all of the provisions of the Constitution in harmony. We have provisions establishing courts of record and then providing for justices of the peace in towns, and also for justices of the peace or District Courts in cities in which the jurisdiction of the court is left to the discretion of the legislature which has already given to such courts jurisdiction of actions of this character. Then, and in addition to this provision, authority is given to the legislature by section 18 to establish other local inferior courts of civil and criminal jurisdiction not limited to cities, but for the counties, towns and villages as well, the jurisdiction of which shall not be greater than that conferred upon County Courts.

My conclusion is that the Municipal Court is a District Court within the city of New York, authorized by section 17 of the

Constitution referred to, and that it has such powers as the legislature has, or shall hereafter prescribe, and that under the charter of Greater New York it had jurisdiction of this cause of action.

PARKER, Ch. J., concurs on first ground; O'BRIEN, HAIGHT (in memorandum), VANN, LANDON and CULLEN, JJ., concur.

Order reversed, etc.