PHILIPP A. STUBER, Respondent, *v.* BIRD S. COLER, as Comptroller of the City of New York, et al., Appellants.

1. NEW YORK CITY — JUSTICES TRANSFERRED TO MUNICIPAL COURT HAVE NO POWER TO APPOINT CLERKS THEREOF FOR FULL TERM. Justices of the inferior courts of the cities of New York and Brooklyn, in office January 1, 1898, who were transferred to the Municipal Court of the city of New York as justices thereof to serve out their unexpired terms, have no power to appoint clerks of that court for terms of six years conferred by the new charter (L. 1897, ch. 378, § 1373) upon justices "elected or appointed as hereinbefore provided," since the words "elected or appointed" refer only to justices to be elected or appointed after the charter went into effect.

2. POWER OF TRANSFERRED JUSTICES TO FILL VACANCIES IN OFFICE OF TRANSFERRED CLERKS. The transferred justices, having had power under the old system to supply themselves with clerks, may make appointments, not extending beyond their own official existence, to fill vacancies that may arise by reason of the death or resignation of clerks transferred with them from the inferior courts.

3. APPOINTMENT FOR FULL TERM TO FILL VACANCY CAUSED BY RESIGNATION OF TRANSFERRED CLERK. An appointment of a clerk of the Municipal Court of the city of New York for the third district of the borough of Brooklyn, purporting to be for the full term of six years, made, upon the resignation of the clerk transferred with him, within two days before the expiration of his term, by a justice who had been transferred from an inferior court of the city of Brooklyn, is not a valid and effective appointment for a full term of six years and is void since such justice was not a justice of the Municipal Court either by election or appointment and had no power to appoint a clerk except such as he possessed before the enactment of the charter.

*Stuber* v. *Coler,* 49 App. Div. 88, reversed.

(Argued June 5, 1900; decided October 2, 1900.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 6, 1900, affirming an order of Special Term continuing a temporary injunction restraining the comptroller of the city of New York from paying to the defendant Carpenter the salary of clerk of the Municipal Court of the city of New York for the third district of the borough of Brooklyn, and the defendant Lynch, as judge of that court, from certifying to any pay roll in favor of said Carpenter.

The nature of the proceeding, the question certified and the facts, so far as material, are stated in the opinion.

*John Whalen, Corporation Counsel* (*William J. Carr* and *Luke D. Stapleton* of counsel), for appellants. The appointment of the defendant Carpenter on January 1, 1900, was valid and effectual, and he is now the legal incumbent of the office. (L. 1897, ch. 378, § 1373; *People ex rel.* v. *Kilbourn,* 68 N. Y. 479; *People ex rel.* v. *Raymond,* 37 N. Y. 428; *People ex rel.* v. *Common Council,* 77 N. Y. 503.)

*Joseph A. Burr* for respondent. Between the 1st day of January, 1898, and the 31st day of December, 1899, Schnitzpan had power and authority to appoint a clerk of the Municipal Court whenever a vacancy in said office should exist. (L. 1897, ch. 378; §§ 1350, 1352, 1361, 1373; Const. N. Y. art. 10, § 2; *Matter of Goodwin,* 30 App. Div. 418.) The statute is explicit and only recognizes one term, and that is for six years from the date of appointment. (L. 1897, ch. 378, § 1373.) Where the statute specifies that the commencement of a term shall be the date of appointment, and the duration of a term a definite period from that date, a person chosen to fill a vacancy, however created, holds for a full term. (Throop on Public Officers, § 319; *People ex rel.* v. *Townsend,* 102 N. Y. 430; *People ex rel.* v. *McClave,* 99 N. Y. 83; *People ex rel.* v. *Breen,* 21 J. & S. 167; *People* v. *Keeler,* 17 N. Y. 371.)

O'BRIEN, J. This was an action by a taxpayer to enjoin the comptroller of the city of New York from paying to the defendant Carpenter the salary of clerk of the Municipal Court for the third district of Brooklyn, and the defendant Lynch, as judge of that court, from certifying to any pay roll in favor of said Carpenter as clerk, or from recognizing him as such clerk, or from refusing to recognize one Weiman as the duly appointed and qualified clerk of the court for that district. The defendant Carpenter is also enjoined from acting or attempting to act as clerk of the court, or receiving

any pay or compensation therefor. The injunction granted was continued after a hearing at the Special Term, and that order has been affirmed at the Appellate Division. An appeal has been allowed to this court from the order of affirmance, and a question of law certified.

It is quite apparent that the purpose of this action was to determine which of two persons was entitled to hold the office of clerk of the Municipal Court in the third district of Brooklyn. The parties and the courts below have evidently disregarded the form of the action, and in the aspect in which the case comes here we are not disposed to protract the controversy, since it is in the public interest that it should be settled in the most expeditious way. The court, however, is not to be understood as committing itself to the doctrine that a taxpayer's action in equity will lie for any such purpose.

Before stating the question involved in the appeal, and which the court below has sent here, it is necessary to understand the facts out of which the controversy has arisen. The inferior local courts in New York and Brooklyn, existing prior to the enactment of the present charter, were known in the former city as District Courts, and in the latter as Justices' Courts. By the provisions of the new charter these courts were continued, consolidated and reorganized under the name of the "Municipal Court of the City of New York." (§ 1351.) This was not a new court, but the result of the reorganization and consolidation of certain inferior courts previously existing. When the two cities were united under the same municipal government, it became necessary to make such changes in the jurisdiction and organization of the inferior local courts as to produce something like uniformity. The plan outlined in the new charter for that purpose, briefly stated, is as follows : (1) The justices of the District Courts in the city of New York and the justices of the peace of the first, second and third districts of Brooklyn, in office on January 1, 1898, were continued for the remainder of the term for which they were elected or appointed under the old system, and they were to serve out their then unexpired terms as justices of the Municipal

Court, with the same powers and jurisdiction and subject to all the duties prescribed in the new charter for justices of that court. (2) Their successors were to be elected by the electors of the district at a general election. (3) Seven additional justices were to be appointed by the mayor on or before January 20, 1898, to serve a short term, their successors to be elected for ten years, the mayor to fill vacancies until the next election. (§§ 1345-1357.) (4) The clerks of the court in each district were to be appointed by the justices therein who were *elected or appointed* as hereinbefore provided, and to hold office for the term of six years from the date of the appointment. (§ 1373.) (5) But by the last-named section the clerks of the District Court of New York and of the Justices' Courts in the first, second and third districts of Brooklyn in office on January 1, 1898, were continued in office until the expiration of their terms as clerks of the Municipal Court. (6) The justices *elected or appointed* pursuant to the act were to qualify by taking the oath of office.

It is important to observe here that the words "elected or appointed" in the several sections of the new charter referred to could have no application to the justices of the peace, or the justices of the District Courts within the enlarged territory, constituting the new city, who were in office before the new charter went into complete effect. They had not been either elected or appointed to the reorganized Municipal Court in any legal or proper sense. They had been elected or appointed to the office of justice of the District Court or as justices of the peace under the old system and transferred to the Municipal Court as justices thereof by operation of law to serve out their unexpired terms. They were not required to take the oath of office, since they had taken it before when they assumed office under the old municipal government. The statute found them in office and kept them there, but transferred them to duty in a court of the same character, which was a consolidation and reorganization of the old system, but it did not *appoint* them in any legal sense. The legislature has no power under the Constitution to appoint a

justice of an inferior local court by statute. They must either be elected by the people or appointed by some local authority. So we must conclude that the words " elected or appointed " refer to the justices of the court created after the act went into effect, and not to those who were transferred as acting justices by operation of law.

It is true that the statute says that the latter justices shall possess the same jurisdiction, power and authority as the former, but that provision obviously refers to their judicial powers and duties and has no reference to the power to appoint clerks. There was no necessity to confer upon them any power to make such an appointment, since, as we have seen, their clerks serving under the old system were transferred with them to serve until their terms expired.

But it is said that this construction would disable the justices so transferred from appointing a clerk to fill a vacancy caused by the death or resignation of one of the old clerks so transferred by the statute. If this objection had any real foundation it would simply amount to an omission on the part of the lawmakers and could not change the true meaning of the statute ; but it has not, and the answer to it is quite plain. Whatever power they possessed and were vested with originally under the old system with respect to appointments to fill a vacancy in the office of clerk they retained and carried with them when transferred to new duties by the statute. While no new power in that respect was conferred upon them when transferred, it is equally clear that they were not shorn of any that they had before. The office which they held originally under the old system included the power to supply themselves with clerks, and that was not abolished by the new charter as to them. They could still do, during the remainder of their term, in that respect, whatever they could do before ; that is to say, they could fill vacancies in the office of clerk, but such appointments could not extend beyond their own official existence. When a justice of the peace or of the District Court, vested with the power to appoint or remove his clerk at pleasure, was made a justice of the Municipal Court, by statute, to

serve out his term, the same power with respect to his clerk
followed the office, except in só far as it was expressly abol-
ished by statute. It may be that under the new charter they
could not remove the clerk as before, but, certainly, they
could fill vacancies. So it is plain that the construction which,
in my opinion, the statute should receive, does not in the least
hamper or cripple any of the justices transferred from the old
system with respect to appointing a clerk in·case of a vacancy
in that office. It simply denies to them the right to exercise
the new power to appoint a clerk for the term of six years,
and leaves to them every power. that they possessed before.

This view of the statute law applicable to the question
involved brings us to the facts of the case. One William
Schnitzpan, before the enactment of the new charter, had
been elected as a justice of the peace in the third district of
Brooklyn for a term to expire on January 1, 1900, and was
one of the justices transferred to the Municipal Court. His
clerk, appointed when he was acting as a justice of the peace,
was transferred with him by the statute and his term would
expire at the same date as that of the justice by whom he was
appointed. On the 29th of December, 1899, two days before
the expiration of his term, the clerk resigned, and thereupon
Schnitzpan, two days before his term expired, appointed Wei-
man clerk of the Municipal Court in the third district for six
years.

The defendant Lynch was duly elected as a regular justice
of the Municipal Court under the new charter at the election
in November, 1899, for a full term to succeed Schnitzpan in
the third district. He qualified and entered upon the duties
of the office on the first of January, 1900, but then found
that his predecessor had provided him with a clerk for six
years, by an appointment made just before his term was about
to expire, in the person of Weiman. The new justice refused
to recognize the appointment and proceeded to appoint the
defendant Carpenter as clerk of the Municipal Court in the
third district for the full term of six years, and the latter
qualified, but, as already stated, the order in this case enjoins

him from acting or receiving the salary, the justice from certifying to the pay roll and the comptroller from paying him.

The question certified to us by the court below is in the following words, the court having first allowed the appeal: "Upon the facts disclosed by the record in the present case was the appointment of Julius Weiman, made on the 28th of December, 1899, to be clerk of the Municipal Court of the City of New York for the Third District in the Borough of Brooklyn, a valid and effective appointment for the term of six years?" We think it was not a valid appointment for the reason that Schnitzpan had no power to make it. It is clear that the appointment of Carpenter made by the new justice must be valid, unless the prior appointment of Weiman, made under the circumstances stated, was a fatal obstacle in the way. But since Schnitzpan was not one of the justices empowered by the statute to appoint a clerk for six years his act was void and his appointee acquired no rights under it. The appointment was made by one who was not a justice of the Municipal Court, either by election or appointment, but who was simply serving out his unexpired term as justice of the peace under another name or title, but with no power of appointment except such as he possessed before the enactment of the charter. The new power to appoint a clerk with a term of six years was conferred only upon the regular justices of the Municipal Court elected or appointed by the mayor under the new charter. It was not conferred upon the justices of the peace or District Court justices transferred to duty in the court by the statute with their clerks for the unexpired portion of their term. That class of justices, of which Schnitzpan was one, had no power with respect to the appointment of clerks, except such as they possessed when they originally took office. When the clerk resigned a vacancy was created for two or three days, and the appointment may have operated to fill that vacancy, but nothing more.

This is so for another reason. The statute in providing that the clerks should hold office for six years from the date of the appointment was intended to designate the term and

fix its duration. It applied to the first appointments under the charter and those following the expiration of each regular term of six years; but had no reference to vacancies during the term. That was left to be governed by the general law providing for appointments to fill vacancies in office and for the duration of such appointments. The Public Officers Law (Laws of 1892, ch. 681, § 27) is quite clear on this point and covers the case, since the charter contained no express provision for appointments to the office of clerk of the court where a vacancy occurred. "If an appointment of a person to fill a vacancy in an appointive office be made by the officer, or by the officers, body or board of officers, authorized to make appointment to the office for the full term, the person so appointed to such vacancy shall hold office for the balance of the unexpired term."

Those considerations are quite sufficient to dispose of this case. If it had been alleged and found that the act of Schnitzpan in making the appointment, as his own term was about to expire, was in bad faith, then it is possible that another principle which the courts have applied to the acts of public officers in similar cases would operate. (*Hendrickson* v. *City of New York*, 160 N. Y. 144; *Wait* v. *Ray*, 67 N. Y. 36; *Morrow* v. *Ostrander*, 13 Hun, 219.) But it is unnecessary to inquire how far, if at all, the doctrine of these cases applies to the act of a public officer in making an appointment to office.

The order appealed from should be reversed, with costs, the injunction order vacated and the question certified answered in the negative.

PARKER, Ch. J., BARTLETT, HAIGHT, VANN, LANDON and CULLEN, JJ., concur.

Order reversed, etc.