HILL v. MOEBUS et al.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

HIGHWAYS—CARRIAGE AT CURB—SUDDEN TURN ACROSS STREET—COLLISION WITH BICYCLE—NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — EVIDENCE — SUFFICIENCY.

The evidence showed that plaintiff, an experienced rider of a bicycle, was riding his wheel at a moderate speed along the middle of a narrow street; that there was a carriage standing at the right-hand curb, heading in the direction in which plaintiff was going; that when plaintiff was within five or six yards of the carriage the driver mounted the box, and suddenly started, turning the horses across the street; that plaintiff rang his bell, but was unable to avoid a collision, and was injured by striking the pole of the carriage. The driver of the carriage testified that he looked around before starting, but saw no one, and that he started to drive in the same direction he was heading. Held, that the evidence supported a verdict in favor of plaintiff.

Appeal from appellate term.

Action by Henderson Hill against John Moebus and another. From an order of the appellate term, reversing a judgment of the municipal court, plaintiff appeals, under permission of the appellate term. 63 N. Y. Supp. 1109. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Daniel F. Kiely, for appellant.
William West Shaw, for respondents.

O'BRIEN, J. The action was brought in the municipal court of the Seventh district to recover damages for personal injuries sustained by the plaintiff on the morning of September 27, 1899, by being thrown from his bicycle, through the alleged negligence of defendants' servant. The accident occurred on Park avenue, between Sixty-Fourth and Sixty-Fifth streets. At that place the avenue is divided by the railings and shrubbery which mark the tunnel underneath, through which the steam railroad runs. At the close of the trial, judgment was rendered by the court in favor of plaintiff, and the defendants then appealed to the appellate term, which reversed the judgment on the ground that the failure to show that the municipal court had jurisdiction was fatal to the judgment. From the order of the appellate term, the plaintiff appeals.

Both parties concede, in view of the recent decision in Worthington v. Accident Co., 164 N. Y. 81, 58 N. E. 102, that the ground upon which the judgment was reversed is untenable. This would result in a reversal of the order without further consideration, were it not that the defendants insist that it should be affirmed because there was not produced at the trial sufficient evidence of defendants' negligence and plaintiff's freedom from contributory negligence. To determine these contentions requires a brief review of the testimony.

The plaintiff stated that on the morning in question he was riding his bicycle down Park avenue from Sixty-Fifth towards Sixty-Fourth street, nearer to the sidewalk than to the tunnel, and saw a carriage, also facing south towards Sixty-Fourth street, standing by the sidewalk about half a block away; that he was going at about five miles an hour,—not a fast rate,—and when he was five or six yards from the carriage, near the center of the street, the driver faced his horses right out into the avenue, and started to turn directly around; that "of course the reverse of the horses was too short cuts for me to turn out of his way; he was to the right, and impossible for me to get out of the way"; that he rang his bell, but the tongue of the carriage struck his head, and the wheel was smashed to pieces, and he was injured in his stomach, was confined to his house for 10 days on account of his injuries, and had to have his head sewed up, and is still troubled with a weak stomach. He further testified that his salary as sleeping-car porter on the New York Central was $20 a month, and that he had ridden a bicycle for about four years. On cross-examination, he said he thought he could ordinarily stop his wheel within ten feet when going five miles an hour. Morris Strauss, who is in the employ of the plaintiff's attorney, testified that he saw the accident while he was walking north on the west side of Park avenue, between Sixty-Third and Sixty-Fourth streets; that the carriage had been standing about 20 feet north of Sixty-Fourth street, facing towards him, and he saw

the plaintiff coming on his wheel, "not very fast"; that he saw the driver get on the carriage, and turn his horses east, and then northeast, and the plaintiff was halfway between the carriage and the tunnel, and his head was cut in three or four places, and he was taken to the hospital. The witness admitted that he went to the hospital and spoke to the plaintiff about bringing a suit. John Feddick testified that he remembered the accident, and was the driver referred to, and was then in the employ of defendants' firm as coachman; that he had been standing his coach between Sixty-Fifth and Sixty-Fourth streets, and pulled his horses away from the curb, and faced them in the middle of the avenue, to go around to Fifty-Ninth street; that before they swung out he looked around, and saw no one, but did not look again; that he first saw the plaintiff when he was about four feet away, and hollered, but it was too late; that he stopped his team, but plaintiff hit the side of the pole. Jennie Sykes testified that the accident occurred in front of her house, and that the bell first attracted her attention, and on looking out she saw the plaintiff lying perfectly still, not very far from the horses, about the middle of the street.

Upon this evidence, we think that the questions of defendants' negligence and plaintiff's freedom from contributory negligence were clearly questions of fact, to be resolved by the judge of the municipal court. There is sufficient to warrant the conclusion that the plaintiff, while using due care in riding his bicycle along the avenue, even giving notice of his approach by ringing his bell, was intercepted by the defendants' servant suddenly, and without warning or proper attempt to guard against injury to others, turning his horses abruptly into the middle of the narrow roadway, with the result that the plaintiff was seriously injured. The driver says he intended to go down to Fifty-Ninth street, but he does not state by what route he was going, and there is evidence that while on the west side of the avenue, with his horses facing south, he undertook to turn them so as to drive in a northerly direction, although the west side was reserved for vehicles going southward. Whether such conduct was evidence of negligence, because in violation of the law of the road of the state (1 Rev. St. p. 695, § 1) and the city ordinance (Ordinances New York City [1897 Ed.] § 37), it is unnecessary to determine, for the reason that, outside of this question, there is sufficient evidence to sustain the judgment of the municipal court.

That plaintiff was not guilty, as matter of law, of contributory negligence, appears from his testimony. He was on the proper side, and lawfully using the avenue in riding his bicycle. The speed at which he was going—five miles an hour—was not excessive; and, though he testified that while going at that rate he could ordinarily stop within ten feet, he was not called upon to exercise his ability in that direction until the moment when the danger from proceeding became apparent to him. It is true he stated he was five or six yards from the carriage when the driver first moved his horses, which would be fifteen or eighteen feet; but it appears that he thereupon rang his bell to notify the driver of his approach, and when the carriage turned was unable to avoid an accident, having come

in contact with the pole, which threw him from his wheel. When he saw the horses moving, he had no reason to anticipate that after starting the driver would turn in an opposite direction; and, after the driver had started, it does not appear that the plaintiff, by the exercise of any judgment or care, could have avoided or averted the collision. It would therefore seem to us a harsh rule to apply to say that upon the facts disclosed he was, as a matter of law, guilty of contributory negligence.

As to the two versions of the accident, that given by the plaintiff is corroborated by the manner in which, as admitted, it occurred, namely, by the plaintiff striking the pole of the carriage. The carriage had been facing south, and if the driver, as he states, intended to go to Fifty-Ninth street, there was no reason for turning his horses around towards the north to such an extent as to have a bicycle rider going in a southerly direction come in contact with the pole. If he turned to go north, however, as testified by the plaintiff and his witness, he would not only intercept progress down the avenue, but would bring the pole of the coach in a position where the rider of a bicycle going southward could come in contact with it. Without, therefore, determining the right of the driver to turn around on the west side of the avenue, it is certain that he could not do so in clear violation of the rights of others who were properly using that side, and were justified in proceeding upon the theory that a carriage facing south would not, without warning or notice, make an abrupt turn from the curb where it was standing to go in an opposite direction. The determination that the defendants were negligent, and the plaintiff free from contributory negligence, was, we think, supported by evidence; and, as that given by the defendants does not preponderate, we would not be justified in reversing the conclusion reached by the justice of the municipal court upon disputed questions of fact.

We think, therefore, that the order of the appellate term reversing the judgment of the municipal court should be reversed, with costs, and the judgment of the municipal court affirmed, with costs. All concur.