(50 Misc. Rep. 151)

SAKOLSKI v. SCHENKEL.

(Supreme Court, Appellate Term. March 29, 1906.)

**1. WITNESSES—CROSS-EXAMINATION TO SHOW INTEREST.**

In summary proceedings by a landlord, there being a sharp conflict in his testimony and that of the tenant and a witness in his behalf as to whether there was a lease for a year or a monthly hiring, the landlord may, by cross-examination of the tenant and his witness, attempt to show improper relations between them, as bearing on their interest and consequent credibility.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1192–1198.]

**2. APPEAL—HARMLESS ERROR.**

Allowing cross-examination for the purpose of affecting credibility is harmless; no damaging evidence being developed, and the testimony being stricken out on motion, and the jury instructed to disregard it.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 4178–4184.]

**3. CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS.**

Municipal Court Act of the City of New York, Laws 1902, p. 1494, c. 580, § 12 (7), as amended by Laws 1904, p. 1429, c. 598, providing that there shall be such a rotation of the justices of such court that each justice, after holding court in his own district for one month, shall sit in at least five of the other districts of the court before returning to the district for which he was elected or appointed, "provided that the justices elected or appointed for any borough shall hold court in such borough," does not deny any one the equal protection of the law, in contravention of the Constitution of the United States, though when the act was passed there was but one borough of the city that had as many as six districts of the court.

**4. JUDGES—HOLDING COURT IN DIFFERENT DISTRICTS.**

The Municipal Court of the City of New York being in effect a district court, Municipal Court Act, Laws 1902, p. 1494, c. 580, § 12 (7), as amended by Laws 1904, p. 1429, c. 598, providing for justices of the court holding court in districts other than that in which they are elected, is authorized by Const. art. 6, § 17, providing that district court justices may be elected in cities in such manner and with such powers as shall be prescribed by law.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Summary proceedings by Dora Sakolski, landlord, against Jacob Schenkel, tenant. From a final order in favor of the landlord, the tenant appeals. Affirmed.

Argued before SCOTT, P. J., and GIEGERICH and GREEN-BAUM, JJ.

Schleimer & Schleimer, for appellant.

Johnston & Johnston, for respondent.

GREENBAUM, J. This·is an appeal by a tenant in summary proceedings brought to dispossess him for an alleged holding over; the tenant asserting a yearly lease, and the landlord a monthly hiring. Upon the issue of fact thus raised, the jury to whose determination the matter was submitted found a verdict in favor of the landlord.

Two questions of law are presented upon this appeal: First, against the tenant's objections, certain testimony was permitted to be introduced upon the cross-examination of the tenant and of a witness called in his behalf, which he claims tended to prejudice the jury to his detriment; secondly, that the justice before whom the proceeding was tried was without jurisdiction.

As to the first point, it is sufficient to say that, while at first blush it might seem that the cross-examination was incompetent and irrelevant, because it attempted to elicit improper relations between the tenant and his witness, yet, inasmuch as there was a sharp conflict between the parties as to the question of fact relating to the term of hiring, concerning which both these witnesses testified, it became important to inquire into the relations existing between them, as bearing upon their interest and consequent credibility. Besides, no damaging evidence was developed, and the testimony was all stricken out upon the tenant's motion, and the jury instructed to disregard it. We cannot say that this testimony prejudiced the tenant's case, and, indeed, it would be reasonable to infer that the unsuccessful effort of the landlord would ordinarily re-act upon him, and it is not probable that the rights of the tenant were thereby adversely affected.

The second point involves the constitutionality of subdivision 7 of section 12 of the Municipal Court act (Laws 1902, p. 1494, c. 580, as amended by Laws 1904, p. 1429, c. 598), which provides for a rotation of the justices in holding court in districts other than those in which they were elected. The proceeding was tried in the Fourth district, and it is claimed that the justice who presided at the trial was elected for the Thirteenth district. There is no proof submitted as to the fact that the justice in question was not elected for the Fourth district, but we shall assume to take judicial cognizance of the fact that he was elected for the Thirteenth district. The circumstances under which the justice presided in the Fourth district court were not disclosed, and, for aught we know, he may have held court by reason of the exigencies of the illness or disability of another justice, as provided in section 13 of the Municipal Court act (Laws 1902, p. 1494, c. 580). As both parties to the controversy have, however, assumed the fact to be that said justice held court in obedience to the rules adopted by the board of justices, as required by section 12 of the Municipal Court act,

and pursuant to the rotation feature embodied in subdivision 7 of said section, we have deemed it proper to dispose of the question upon the conceded facts.

The alleged unconstitutionality of the act is asserted to rest upon the grounds that it is "class legislation," that it confers upon the Municipal Court "greater jurisdiction" than upon the County Courts, and that it invades the rights of the citizens of the district in which the justice was elected, by depriving them of the justice elected by them, and permitting a justice elected in another district to exercise jurisdiction in their district. The argument that the act is discriminatory and operates as class legislation is based upon the provision that there shall be "such a rotation of the justices * * * as that each justice after holding court in his own district for one month shall sit in at least five of such other districts, at least once for a period of one month at a time previous to his return to the district for which he shall have been elected or appointed, provided that the justices elected or appointed for any borough shall hold court in such borough."

It is contended that, when this act was passed, there were 25 courts in the greater city, as follows: Two in the borough of the Bronx; two in Richmond; three in Queens; five in Brooklyn; and thirteen in Manhattan—and that by the terms of the act it would therefore be applicable only to the borough of Manhattan. To uphold this argument, we must find that the statute offends that provision of the Constitution of the United States, which declares that no state shall deny to any one within its jurisdiction the equal protection of the laws. In adopting this act, the Legislature must be presumed to have determined that a departure from the system theretofore in force would tend to correct some assumed abuses or deficiencies in the administration of justice in the Municipal Court, and to so safeguard the rights of the citizens so that the equal protection of the law would be extended to all who have occasion to resort to this court. With the reasons which influenced the Legislature, or the wisdom of its action, we have nothing to do. Our only concern is with the question of its power. Because the principle involved was not extended to all boroughs, it does not follow that the residents of the borough of Manhattan had greater rights than those of the other boroughs, or that the latter were denied an equal protection of the laws. Indeed, the residents of the other boroughs come directly within the benefits designed by the act, because it enabled them to secure, when brought into any court of the borough of Manhattan, opportunities equal to all other suitors. And that no discrimination, in any event, was intended, is furthur evident from the fact that, since the adoption of the act under consideration, two additional courts have been established by the Legislature in the borough of Brooklyn, which now has seven courts, and which now comes directly within the provisions of the act.

The second ground urged, that greater jurisdiction is conferred by the act upon the Municipal Court than those upon the County Court, needs but scant attention. This contention has been passed upon by the Court of Appeals adversely to the appellant. Worthington v. London G. & A. Co., 164 N. Y. 81, 91, 58 N. E. 102, 105. It was there held that "the Municipal Court is not a new inferior local court, but

old local tribunals, consolidated and reorganized under a new name and adapted to the needs of the greater city," and that it is a court created by the Legislature, under the provisions of section 17 of article 6 of the state Constitution, and not section 18 of said article.

The only portion of section 17, art. 6, of the Constitution applicable to the Municipal Court reads as follows:

"Justices of the peace and District Court justices may be elected in the different cities of this state in such manner and with such powers and for such terms, respectively, as are or shall be prescribed by law."

By virtue of the constitutional power thus conferred upon the Legislature, the Municipal Court was established in the form in which it now exists, having a jurisdiction coextensive with the territory of the present city of New York, and limited as to subject-matters, as provided in the Municipal Court act, and as was stated in the Worthington Case, supra, this did not in any way give the inferior court "greater powers, importance and dignity than a county court."

The final point, that the election of a justice in a given district limits his jurisdiction to said district, will be next considered. The authority of the Legislature, under the Constitution, is such that it may determine the manner of the election of the justices of the Municipal Court, their terms of holding office, and their powers. In the exercise of its prerogative, the Legislature saw fit to create a Municipal Court in the city of New York, composed of numerous trial courts distributed throughout the various districts of the city, and to provide for the election of one justice in each of said districts by the voters of said district, with jurisdiction, nevertheless, in each court extending territorially over the city of New York, and with power in each justice to hold court in another district, under rules and restrictions provided for in said act. This is no novelty in our judicial system. The Constitution provides for the election of Supreme Court justices by the electors of the several existing judicial districts, and confers upon them the power of holding court in any county of the state. The constitutional delegation to the Legislature of the right of establishing the Municipal Court, and of determining the manner of the election of the justices of said court and their powers, clearly confers the right to determine the manner and extent within the constitutional limitation that said justices shall exercise their judicial functions.

It seems unnecessary here to criticise the infelicitous way in which the legislative intent has been effectuated, or to refer to the apparently inconsistent provision of section 13 of the Municipal Court act (Laws 1902, p. 1494, c. 580), which declares that:

"A justice of the Municipal Court of the city of New York shall hold court in the district in which he was elected or appointed to fill a vacancy," etc.

Such criticisms, however, do not affect the constitutional right of the Legislature in respect of the matters discussed, but simply bear upon the construction to be given to the various enactments touching the manner in which the justices were to exercise their judicial functions.

We are of the opinion that the act requiring a rotation of the justices is constitutional, and the judgment is affirmed, with costs. All concur.