(73 Misc. Rep. 363.)

## In re MARKLAND.

(Supreme Court, Special Term, New York County. September, 1911.)

1. MANDAMUS (§ 74*)—SUBJECTS OF RELIEF—ACTS OF PUBLIC OFFICERS—CONDUCT OF ELECTIONS.

   The effort of a voter by application for mandamus to have fixed the law governing the rights of himself and other voters prior to an election should not be frustrated by a technical or strained construction of the law governing the procedure.

   [Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 74.*]

2. JUDGES (§ 8*)—APPOINTMENT—CONSTITUTIONAL AND STATUTORY PROVISIONS—"ELECTIVE OFFICE."

   The offices of justices of the Municipal Court of the city of New York are elective within Const. art. 10, § 5, providing, in relation to filling vacancies in office, that, in case of elective officers, no person appointed to fill a vacancy shall hold his office under such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy.

   [Ed. Note.—For other cases, see Judges, Dec. Dig. § 8.*

   For other definitions, see Words and Phrases, vol. 3, p. 2341.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. JUDGES (§ 8*)—APPOINTMENT—CONSTITUTIONAL AND STATUTORY PROVISIONS.

　　Greater New York Charter (Laws 1901, c. 466) § 1357, as amended by Laws 1907, c. 603, § 3, providing that a vacancy in the office of justice of the Municipal Court otherwise than by expiration of term shall be filled at the next general election in an odd year happening not less than three months after the vacancy occurs, and authorizing the mayor to appoint a person to fill the vacancy in the meantime, is violative of Const. art. 10, § 5.

　　[Ed. Note.—For other cases, see Judges, Dec. Dig. § 8.*]

Application by William H. Markland for a peremptory writ of mandamus to Patrick J. Scully, city clerk of the city of New York, and others, constituting the Board of Elections of the City of New York. Granted.

Affirmed 131 N. Y. Supp. 364.

Arnon L. Squiers (Charles B. Law, of counsel), for petitioner.
Archibald R. Watson, Corp. Counsel (Patrick E. Callahan, of counsel), for city clerk and board of elections.

JAYCOX, J. [1] The relator seeks in this proceeding to compel the city clerk to certify to the board of elections the office of Municipal Court justice as one of those to be filled at the coming election in November, 1911. On the 8th day of August, 1911, one George Fielder, then one of the justices of the Municipal Court of the city of New York, died. Such vacancy occurring less than three months prior to the general election, the city clerk has not certified to the board of elections of the city of New York that position as one to be filled at the ensuing election. The defendants make several objections not going to the merits of the applications. These impress me as being entirely without merit. The relator seeks by a proceeding in court to have an important question settled prior to the election. It is essential to the proper and intelligent exercise of the right of franchise that this question should be determined before election day. Under these circumstances, the effort of a voter to have the law as to his rights and the rights of the other voters in his district fixed and determined prior to election is commendable, and should not be frustrated by a technical or strained construction of the law governing the procedure. This view of the matter has the apparent approval of the Court of Appeals, which has said in an action which could not so well commend itself to the liberal consideration of the court:

　　"The parties and the courts below have evidently disregarded the form of the action, and in the aspect in which it comes here we are not disposed to protract the controversy, since it is in the public interest that it should be settled in the most expeditious way." Stuber v. Coler, 164 N. Y. 22–24, 58 N. E. 17.

[2] Coming then to the merits of the application, all parties agree that, if the office of Municipal Court justice is a constitutionally elective office, then the provisions of section 5 of article 10 of the Constitution of the state apply, and the writ must issue. On the other hand, if the office is not an elective office, made so by the Constitu-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion, then this constitutional provision has no application, and the amendment to the charter hereinafter referred to, passed in 1907, was a valid exercise of legislative power, and the application must be denied. There is no need here to detail the situation existing in the territory which became the city of New York on the 1st day of January, 1898. Such data are clearly and succinctly set forth in Worthington v. London G. & A. Co., 164 N. Y. 81, 58 N. E. 102.

[3] For the purposes of this decision, it is sufficient to say that at that time there were justices of the peace in the First, Second, and Third districts of the city of Brooklyn. Section 1351 of the charter (Laws 1901, c. 466) reads as follows:

"On and after the first day of January, 1898, the district courts of the city of New York and the justices' courts of the First, Second and Third districts of the city of Brooklyn are hereby continued, consolidated and reorganized under the name of 'The Municipal Court of the City of New York,' which said court shall be a local civil court within the city of New York as constituted by this act, and shall not be a court of record or have any equity jurisdiction; but shall have the jurisdiction, powers, duties and organization hereinafter prescribed."

And 1352, as follows:

"That said justices of the peace in the First, Second and Third districts of the city of Brooklyn, in office on the 1st day of January, 1898, shall continue for the remainder of the terms for which they were elected or appointed, and shall be called justices of the Municipal Court of the City of New York."

Provision was then made (section 1357) for filling vacancies by a provision of the charter which read as follows:

"Vacancies occurring in the office of justices of said court shall be filled at the next ensuing general election for the unexpired term commencing on the first day of January next after said election; and the mayor of the city shall appoint some proper person to fill such vacancy in the interim within twenty days after the same occurs."

This was amended in 1907 (Laws 1907, c. 603, § 3) to read as follows:

"Vacancies occurring in the office of justices of said court otherwise than by expiration of term shall be filled at the next general election in an odd-numbered year happening not less than three months after such vacancy occurs, for a full term commencing on the first day of January next after said election; and the mayor of the city shall appoint some proper person to fill such vacancy in the interim within twenty days after the same occurs."

It is under this amendment that the controversy arises, the relator claiming that this amendment is violative of section 5 of article 10 of the Constitution. Section 17 of article 6 of the Constitution provides as follows:

"Justices of the Peace; District Court Justices.—Sec. 17. The electors of the several towns shall, at their annual town meetings, or at such other time and in such manner as the Legislature may direct, elect justices of the peace, whose term of office shall be four years. In case of an election to fill a vacancy occurring before the expiration of a full term they shall hold for the residue of the unexpired term. Their number and classification may be regulated by law. Justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard by such courts as are or may

be prescribed by law. · Justices of the peace and district court justices may be elected in the different cities of this state in such manner and with such powers, and for such terms, respectively, as are or shall be prescribed by law; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities, or appointed by some local authorities thereof."

Under this provision, the offices of district judge and justice of the peace are made elective, and therefore governed by section 5 of article 10. People ex rel. Howard v. Board of Supervisors of Erie Co., 42 App. Div. 510, 59 N. Y. Supp. 476, affirmed on opinion below, 160 N. Y. 687, 55 N. E. 1099; People ex rel. Ward v. Scheu, 167 N. Y. 292, 60 N. E. 650. I entertain no doubt that by the provisions of this section (section 17, art. 6) of the Constitution justices of the peace and district court judges were made elective. The option granted by the permissive word "may" is as to whether the city shall have such officers at all or not, and has no relation to the manner of their selection. It therefore follows as the logical corollary of the above that, if the Municipal Court is a continuation of the courts held by district judges and justices of the peace, then the Municipal Court justices are made elective by the Constitution. In other words, if they are the same officers under a new name, they are constitutionally elective officers. This is not an entirely new question. It first came before the courts in Matter of Schultes, 33 App. Div. 524, 54 N. Y. Supp. 34, and in that case it was held that the Municipal Court was a new court. Later the question as to whether the Municipal Court was a new creation or the continuation of an old court came before the court in Worthington v. London G. & A. Co., 164 N. Y. 81, 58 N. E. 102, and it was there held that this was not a new court, but was the continuation of some old ones. Although the Court of Appeals does not in the Worthington Case in express terms overrule the Schultes Case, 33 App. Div. 524, 54 N. Y. Supp. 34, still I think it will be seen that it does so just as effectually, when it is borne in mind that the decision in the court below which the Court of Appeals reverses rested absolutely upon the Schultes Case. In the opinion of the court below is was said:

"But the Municipal Court, as established by the Greater New York charter, was not a continuation of the District Court of the former city of New York, but was a creation of a new court of inferior jurisdiction. That principle has been established in Matter of Schultes, 33 App. Div. 525 [54 N. Y. Supp. 34], and we have no doubt of the correctness of the decision in that regard." Worthington v. London G. Co., 47 App. Div. 609, 62 N. Y. Supp. 591.

The opinion contains no further discussion of the question, but rests entirely upon the Schultes Case. When, therefore, the Court of Appeals reverses the decision, expresses views diametrically opposed to those in the Schultes Case, and even takes up some of the reasons expressed in the Schultes Case for holding that the Municipal Court is a new court, and says in effect such a result does not follow from those reasons, I think the decision in the Schultes Case must be considered overruled. At page 87 of 164 N. Y., at page 104 of 58 N. E., the court says:

"It is argued that the new name and a few changes as to jurisdiction create a new court. This contention cannot be sustained."

It then proceeds to analyze the changes, and holds that those changes do not create a new court. Some of these changes of jurisdiction are the same ones pointed out in the opinion of the court in the Schultes Case for concluding that the Municipal Court is a new court. But, aside from all reasoning, the Schultes Case held that the Municipal Court was a new court, and the Court of Appeals in the Worthington Case just as broadly held that it was not a new court, but was the continuation of some courts previously established. From this contention there was no dissent, although there was dissent from the second ground stated in the opinion. The Schultes Case was on the brief of both counsel in the Worthington Case. Therefore, if it was possible to distinguish it, it would have been done. Further than this, the plain reading of the statute cannot be fulfilled in any other way than by holding that the Justices' Courts and District Courts are continued and are constituent elements of the Municipal Court. The statute says these courts are continued. They are not continued if abolished and a new court created. Courts cannot be consolidated if destroyed or reorganized if they do not exist. That I am not in error in so interpreting the Worthington Case is amply borne out by the opinion of the court in People v. Dooley, 69 App. Div. 521, at page 523, 75 N. Y. Supp. 350, at page 357, in which Mr. Justice Willard Bartlett says:

"The same line of reasoning applies to the justices of the Municipal Court, it having been determined by the Court of Appeals that the Municipal Court of the city of New York, as established by the Greater New York charter, is merely a continuation of the pre-existing District Courts of the same city and the Justices' Courts in the city of Brooklyn. Worthington v. London G. & A. Co., 164 N. Y. 81 [58 N. E. 102]."

To recapitulate, justices of the peace and district judges in cities are made elective by section 17 of article 6 of the Constitution. The Court of Appeals has decided that the Municipal Court is but a continuation of those courts. Therefore, justices of the Municipal Court are made elective by the Constitution, and section 5 of article 10 applies to them. That section provides as follows:

"Vacancies in Office; How Filled.—Sec. 5. The Legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy."

It is plain that the relator is entitled to the relief prayed for, and that the writ he seeks must issue.

Application granted.