JOHN PETTERSON, Appellant, *v.* LEONARD R. WELLES, as Police Commissioner of the City of Brooklyn, and GERARD B. VAN WART, Respondents.

*Inferior local courts — civil justices in Brooklyn — abridgment of their term by the Constitution of 1895 — extent of their jurisdiction.*

A justice of the peace holding office in the city of Brooklyn is a justice of an "inferior local court" within the meaning of the Constitution, and the term of office of such a justice, expiring in an even-numbered year and before its end, is abridged by article 12, section 3, of the Constitution, so that it expires at the end of the preceding year.

The charter of the city of Brooklyn enacted in 1888 (Chap. 583) continued in force the local justices' courts then in existence.

The provisions of section 4 of title 21 of the Brooklyn charter of 1888, that justices of the peace elected pursuant to that act should have and exercise such jurisdiction and powers and perform such duties as were designated by the Code of Criminal Procedure and the Code of Civil Procedure to be exercised and performed by justices of the peace, is to be construed to mean that they are to have such jurisdiction and power within the city of Brooklyn, and not as giving them jurisdiction generally in the county of Kings.

The language of article 6, section 22, of the Constitution of 1895 does not neces-
sarily conflict with the language of article 12, section 3, of the same instru-
ment, and both should be read together.

APPEAL by the plaintiff, John Petterson, from an order of the
Supreme Court, made at the Kings County Special Term and
entered in the office of the clerk of the county of Kings on the 9th
day of January, 1896, adjudging that Gerard B. Van Wart is enti-
tled to the office of justice of the peace for the second judicial dis-
trict of the city of Brooklyn.

*James Troy* and *Jerry A. Wernberg*, for the appellant.

*Horace Graves*, for the respondent Van Wart.

BROWN, P. J.:

At the general election held in 1891 the appellant was elected to
the office of justice of the peace for the second judicial district of
the city of Brooklyn.

The term of his office was four years, and by the provisions of
the law then in force would have expired on the 30th day of April,
1896.

The respondent was, at the last general election, elected as the
successor of the appellant.

It is the contention of the respondent that the appellant's term
of office was abridged by section 3 of article 12 of the Constitu-
tion, which took effect on January 1, 1895, and that, pursuant to
the provisions of that instrument, the appellant's term of office
expired on the 31st day of December, 1895.

The section referred to, so far as it is applicable to the case before
us, is as follows: " All elections of city officers, including    *    *    *
judicial officers of inferior local courts elected in any city, or part of
a city    *    *    *    shall be held on the Tuesday succeeding the first
Monday in November, in an odd-numbered year, and the term of
every such officer shall expire at the end of an odd-numbered year.
*    *    *    The terms of office of all such officers which under exist-
ing laws would expire in an even-numbered year, and before the end
thereof, are abridged so as to expire at the end of the preceding

year. This section shall not apply * * * to elections of any judicial officer, except judges and justices of inferior local courts."

The Special Term held that the provision quoted was applicable to the appellant, and this decision must clearly be affirmed unless the appellant is correct in his claim that he is not a judge or justice of an inferior local court.

The appellant's contention is that he is a justice of the peace; that the Constitution, as amended in 1869, provided for the election in cities of two distinct officers, one a "justice of the peace" and the other a "judge or justice of an inferior court," or, as they are sometimes designated, "District Court justices." (Art. 6, § 18.)

That the distinction between those officers is clearly maintained in the Constitution and laws of the State, and that the names are descriptive of particular officers and not of their functions.

That the distinguishing feature of the office of a justice of the peace, as it has existed since the creation of the State and as contemplated in the Constitution, is the combination in the same individual of a civil and criminal jurisdiction.

That the act, pursuant to which the appellant was elected (Chap. 583, Laws of 1888), designated the officer as a justice of the peace, and conferred upon him that double jurisdiction which has always been the characteristic feature of that office. This argument has recived our careful attention. But we are of the opinion that it is not applicable to the case before us. The particular designation given to the office in the statute is of very little importance in determining the question presented. As was said by Judge PECKHAM in *People ex rel. Sinkler* v. *Terry* (108 N. Y. 1): "It is not the name in such case, but the jurisdiction of the court which is material, and so long as that is inferior and local the name given to the person who is to preside in it is not generally important." That was said in reference to a statute creating a court of local jurisdiction and authorizing the election of a judicial officer to preside over it who was designated as a justice of the peace, and to whom was given within the designated locality "the usual powers of justices of the peace of towns" in relation to crimes and also in civil actions. Moreover, the Constitution, in article 6, section 22, refers to justices of the peace as local judicial officers. It is in harmony with this provision to hold that a justice of the peace in a city is a judicial

officer of a local court, and in a popular sense there would be no difficulty in deciding that a justice of the peace who presided in a District Court in a city was a " judge or justice of an inferior local court."

That a court of a justice of the peace is " an inferior court " within the meaning of the Constitution is not a debatable question. Its inferiority among the other courts created by the Constitution and authorized to be created by the Legislature, appears from its limited local jurisdiction and its being a court not of record.

But referring-more particularly to the argument of the appellant's counsel, we are of the opinion that, under the statutes applicable to the office held by the appellant, he is a " justice of an inferior local court," and not a justice of the peace, within the meaning of those terms as used in the Constitution.

The office was created by chapter 125 of the Laws of 1849. That act was entitled "An act to establish courts of civil and criminal jurisdiction in the city of Brooklyn." Section 35 authorized the common council to divide the city into two or more districts, for each of which a justice of the peace was to be elected who should hold his office for the term of four years from the first day of May next after his election, and whose jurisdiction within said city was declared to be that possessed by law by justices of the peace of towns. This act was amended by chapter 102 of the Laws of 1850. The said justices were there declared to have a jurisdiction in civil actions like that exercised by the justices of the peace of the towns of the State. The character of the courts thus created was determined by the Court of Appeals in *Geraty* v. *Reid* (78 N. Y. 64). They were there held to be local courts. This conclusion was based upon the provision of the Constitution of 1846, which provided specifically for the election of justices of the peace in the towns of the State only, and authorized the Legislature to create inferior local courts in cities. The amended judiciary article of the Constitution adopted by the people at the general election in 1869 provided not only for the election of justices of the peace in the towns of the State, but also provided that justices of the peace and District Court justices should be elected in the different cities of the State, in such manner and with such powers and for such terms respectively as should be prescribed by law. (Art. 6, § 18.) That provision was not

self-executing, but required legislation to carry it into effect. Local courts existing at the adoption of that article continued until altered or abolished by the Legislature.

The local courts of justices of the peace thus continued in the city of Brooklyn at least until the enactment of chapter 583 of the Laws of 1888. And there can be no question that up to the date of the passage of that act there were no justices of the peace in the city of Brooklyn, in the sense claimed by the appellant, but that the officers created by the law of 1849 were justices of "inferior local courts."

We come, therefore, to the consideration of the law of 1888, and the question presented depends upon whether that law abolished the old court and created a new office of a different character, or whether it recognized and continued the local Justices' Courts then existing in the city.

We are of the opinion that the latter is the only construction that can be given to this law.

The act is entitled "An act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn." It does not in terms repeal the acts of 1849 and 1850, which I have referred to, nor does it in terms create a new local court or judicial officer having jurisdiction in civil actions, nor does it abolish any. It provides (Tit. 22, § 26) that "all persons at present holding office in the city of Brooklyn, whether elected or appointed, shall continue to hold their respective offices until the expiration of the time for which they were elected or appointed, except as otherwise provided in this act," and that "there shall be no justices of the peace * * * hereafter elected in the city of Brooklyn except in the place of justices of the peace chosen at the general election in eighteen hundred and seventy-nine and their successors." (Tit. 21, § 9.) It regulates the qualifications, elections and jurisdiction of the justices to be elected, which in all respects were the same as those existing under the act of 1849.

In various parts of the act the existence of the local courts are recognized. (See tit. 3, §§ 6, 15; tit. 2, § 22; tit. 21, § 12.)

At the date of the passage of this act there were three justices in office presiding in and holding courts designated by the Constitution as "inferior local courts," and their terms of office did not expire

until May 1, 1892, and their successors were not to be chosen until the annual election of 1891.

I have said the act of 1849, already referred to, was not in terms repealed by the act of 1888. I think it was still in force after the passage of that act, except so far as it has been modified by its provisions.

Certainly, it is plain that, were it not for the passage of section 3 of article 12 of the Constitution, the term of office of the appellant would not expire until April 30, 1896, and that express limitation we find only in the act of 1849. To that extent that law continued as a valid statute. It was clearly competent for the Legislature in the act of 1888 to have abolished the then existing courts and have provided for their successors. But it did nothing of that kind. It continued the local justices in office, and expressly provided that no justice of the peace should be elected in the city except as the successors of those chosen at the general election in 1879. Those officers concededly were not the same officers as were justices of the peace elected in the several towns of the State, but justices of a local court, and their successors subsequently chosen, of whom the appellant is one, were judicial officers of the same character. The provisions of the act in reference to the Police Courts are in marked contrast to those relating to the Justices' Courts which I have referred to. The existing Police Courts were abolished and new criminal courts created in their places. (Tit. 21, §§ 9, 10.) The plain intent of the law was that the courts exercising jurisdiction in civil cases should continue, but those exercising criminal jurisdiction only, should be abolished and new tribunals substituted in their place.

It is our opinion, therefore, that the act of 1888 did not create a new civil court or a new civil judicial officer. It recognized the existence of local inferior courts of civil and criminal jurisdiction, and provided for their continuance by retaining the justices then in office, and providing for the selection of their successors.

The provision of section 4 of title 21, which provides that "justices of the peace elected pursuant to this act shall have and exercise such jurisdiction and powers and perform such duties as are designated by the Code of Criminal Procedure and the Code of Civil Procedure, to be exercised and performed by justices of the peace," would, in its literal meaning, confer a jurisdiction co-extensive with

the county of Kings. But such, we do not think, is its proper construction.

The jurisdiction of a local court is confined to and must be exercised in the locality, and full effect is given to this expression by treating it as a declaration of the jurisdiction to be exercised within the city of Brooklyn.

A similar provision in the act of 1850 was so construed by the Court of Appeals in *Geraty.* v. *Reid* (*supra*).

If it had been so declared with reference to a new officer created by the act, it would tend to sustain the appellant's contention, but declared with reference to existing courts, it necessarily is limited in its application to the city.

We have not overlooked the provision of section 22 of article 6 of the Constitution. The term "justices of the peace" there used probably refers to such officers as are authorized to be elected in towns and cities. But the language of that section is not necessarily in conflict with the provision of section 3 of article 12. The two provisions relate to the same subject, and must be read together. By the latter provision the terms of some officers are extended and others abridged, and the incumbents hold their office until the expiration of the respective terms thus fixed.

It is conceded by counsel that this action is not the proper form of proceeding to determine the title to an office. But in view of the stipulation of the parties waiving all questions of form of procedure, and the public importance of a speedy disposition of the question presented, we have examined the case and determined to affirm the order appealed from on the merits.

The order must be affirmed, with costs.

All concurred.

Order affirmed, with ten dollars costs and disbursements.