(33 App. Div. 524.)

## In re SCHULTES.

(Supreme Court, Appellate Division, Second Department. October 11, 1898.)

1. COURTS—MUNICIPAL JUSTICES OF NEW YORK CITY—APPOINTMENT.
Under Const. 1895, art. 6, § 17, which substitutes for Const. 1846, art. 6, § 18, providing that justices of the peace and district court justices "shall be elected," the provision that they "may be elected," Greater New York Charter, § 1352, subd. 4, providing that the mayor shall appoint the additional justices of the municipal court of New York City provided for by that act, is valid.

2. SAME—NEW INFERIOR COURTS.
Greater New York Charter, §§ 1351, 1352, provide that the district courts of New York City and the justices' courts of Brooklyn be "continued, consolidated and reorganized under the name of 'The Municipal Court of the City of New York.'" The latter court is given greatly enlarged jurisdiction. The district justices and justices of the peace were continued in office as justices of the new court, and seven additional justices were provided for. *Held*, that the municipal court is a new inferior court, which the legislature had power to create, and not merely a continuation of the old ones.

3. SAME—ELECTION—TERM OF OFFICE.
Under Const. art. 10, § 5, providing that no person appointed to fill a vacancy shall hold office longer than the commencement of the political year succeeding the first annual election after the happening of the vacancy, taken in connection with article 12, § 3, which provides that all elections of city officers shall be held in odd-numbered years, and that the term of such officers shall expire in odd-numbered years, Greater New York Charter, § 1352, subd. 4, providing that the mayor shall appoint seven additional justices of the municipal court to hold office until December 31, 1899, in which year their successors are to be elected, is valid, and their successors cannot be elected in 1898.

4. SAME.
Under Const. 1895, art. 6, § 18, providing that, unless otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct, no election of justices of the municipal court of New York to succeed those appointed to fill vacancies caused by the creation of new justices can take place in 1898, where the only legislative provision is for their election in 1899.

Appeal from special term, Kings county.

Application by John Schultes for a peremptory writ of mandamus against John H. Ellsworth, county clerk of Richmond county, commanding him to publish, as part of the notice required by the election law to be given of the offices to be filled at the ensuing general election, the title of the offices of the justices of the municipal court for

the First and Second districts of the borough of Richmond.　From an order denying the writ, petitioner appeals.　Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Wm. Allaire Shortt, for appellant.

Charles F. Brown, for respondent.

GOODRICH, P. J.　This appeal involves the title of the seven additional justices of the municipal court of the city of New York appointed under the provisions of the Greater New York charter.　The election law (section 5 of chapter 379 of the Laws of 1897) requires the county clerk of each county within the city of New York to publish as a part of the election notice received by him from the secretary of state a notice of the election of "each city, village and town officer who may lawfully be voted for at such [the next] election by the electors of such [his] county or any part thereof."　The Greater New York charter provided for the continuance, consolidation, and reorganization, under the name of "The Municipal Court of the City of New York," of the district courts of the city of New York and the justices' courts of the First, Second, and Third districts of the city of Brooklyn, and authorized the appointment by the mayor of seven additional justices of the said municipal court, two of whom should be residents of the borough of Brooklyn, three of the borough of Queens, and two of the borough of Richmond.　The justices thus appointed were to hold office until December 31, 1899, their successors to be elected at the general election of that year.　In January, 1898, the mayor appointed seven persons as such justices, two of whom—John J. Kenney and Albert Reynaud—resided in the borough of Richmond.　The petitioner, a resident and elector of that borough, applied for a peremptory writ of mandamus requiring the clerk of the county of Richmond to publish notice of the election of successors to said Justices Kenney and Reynaud, on the ground that their terms of office would expire on the 31st of December, 1898, and that their successors must be elected at the general election of that year.　The application was denied, and from such denial the petitioner appeals.

It is conceded by both parties to this proceeding that the main decision turns upon the questions whether the charter, by its language, attempts to abolish or destroy such courts and officers, and whether the municipal court is a new local court of inferior jurisdiction.　And in order to decide these questions we are compelled to make a more analytical statement of the constitutional and statutory provisions upon the subject.　The Greater New York charter provides for the appointment and election of justices of the municipal court of the city of New York.　Section 1 provides that all the municipal and public corporations and parts of municipal and public corporations, including cities, villages, and towns (but not including counties), within the counties of Kings and Richmond and certain parts of Queens, are "annexed to, united, and consolidated" with the old city of New York, and that all such corporations shall cease and determine, and all offices forming parts of such municipal and public corporations are abolished, with certain exceptions, not necessary to enumerate, and

the city of New York is declared to be the successor corporation in law and fact of all such corporations. It will be observed that there is no reference made to the justices of the peace in the towns of Richmond and Queens counties. At the time of the passage of the charter there were district courts in the old city of New York, justices courts in Brooklyn and Long Island City and in Richmond and Queens counties. The district courts of New York had existed under various names for many years prior to the constitution of 1895. They are mentioned in the amended constitution of 1846, which contained a provision that "justices of the peace and district court justices shall be elected in the different cities of this state, in such manner, and with such powers, and for such terms, respectively, as shall be prescribed by law." Amended Const. 1846, art. 6, § 18. The constitution of 1895 changed the word "shall" to "may," and the provisions now read as follows:

"Sec. 17. The electors of the several towns shall, at their annual town meetings, or at such other time and in such manner as the legislature may direct, elect justices of the peace, whose terms of office shall be four years. * * * Justices of the peace and district court justices may be elected in the different cities of this state in such manner, and with such powers, and for such terms, respectively, as are or shall be prescribed by law; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities, or appointed by some local authorities thereof.

"Sec. 18. Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct."

It is evident that the words "district court justices" refer exclusively to the district courts of New York, as there are no courts by that name in any other part of the state. The justices' courts in Brooklyn were first created by chapter 125 of the Laws of 1849, and continued by chapter 583 of the Laws of 1888. The Greater New York charter contains the following provisions:

"Sec. 1351. On and after the first day of January, eighteen hundred and ninety-eight, the district courts of the city of New York and the justices' courts of the First, Second and Third districts of the city of Brooklyn are hereby continued, consolidated and reorganized under the name of 'The Municipal Court of the City of New York,' which said court shall be a local civil court within the city of New York as constituted by this act, and shall not be a court of record or have any equity jurisdiction; but shall have the jurisdiction, powers, duties and organization hereinafter prescribed."

"Sec. 1352. The said court shall be held by justices to be elected or appointed as follows:

"1. The justices of said district courts of the city of New York and said justices of the peace in the First, Second and Third districts of the city of Brooklyn, in office on the first day of January, eighteen hundred and ninety-eight, shall continue for the remainder of the terms for which they were elected or appointed, and shall be called justices of the municipal court of the city of New York, and shall have all the powers and jurisdiction and be subject to all the duties and requirements hereinafter prescribed for justices of said municipal courts.

"2. The successors of the justices mentioned in the first subdivision of this section shall be elected by the electors of the districts for which said justices were elected or appointed respectively, as described and renumbered in sections thirteen hundred and fifty-nine, thirteen hundred and sixty and thirteen hundred and sixty-one of this act, at the general election to be held in the year at the end of which the terms of said justices shall expire.

"3. There shall be elected at the general election to be held on the first Tuesday succeeding the first Monday of November, in the year eighteen hundred and ninety-seven, as many justices of said municipal court as there shall be justices of the said district courts in the city of New York or justices of the peace of the said First, Second and Third districts, in the city of Brooklyn, whose terms expire at the end of year eighteen hundred and ninety-seven. Such justices shall be elected by the electors of the districts for which such justices whose terms expire in eighteen hundred and ninety-seven were elected or appointed, as described and renumbered in sections thirteen hundred and fifty-nine, thirteen hundred and sixty and thirteen hundred and sixty-one of this act.

"4. On or before the twentieth day of January, eighteen hundred and ninety-eight, the mayor of the city of New York shall appoint seven additional justices of said municipal court, two of whom shall be residents of the Fourth and Fifth districts of the borough of Brooklyn, three of whom shall be residents of the First, Second and Third districts of the borough of Queens, and two of whom shall be residents of the First and Second districts of the borough of Richmond, respectively. The justices so appointed shall hold office till the thirty-first day of December, eighteen hundred and ninety-nine, and their successors shall be elected at the general election to be held in the year eighteen hundred and ninety-nine, and shall be residents of the same districts as the justices appointed pursuant to this subdivision."

The learned counsel for the appellant contends that the municipal court thus created is really only a continuation of the district and justices' courts, and that the justices are still district court justices and justices of the peace in their respective localities; that the additional justices must be elected, and cannot be appointed to office by the local authorities, except in case of vacancies. He bases his contention on article 6, § 17, above quoted. But I think effect should be given to the fact already adverted to that the words "shall be elected," in the constitution of 1846, were changed to the words "may be elected" in the constitution of 1895. It may be that those officers being recognized in the constitution of 1895, the incumbent justices of the peace in towns, who were then in office, cannot be legislated out of office so long as the town exists, and no such attempt appears in the charter; but it by no means follows that their functions and duties and the method of their election may not be altered by the legislature to meet the necessities of changed conditions. Section 17 expressly confers upon the legislature the power to declare the "manner" of their election and their "powers" and "terms" of office. It was held in Gertum v. Board, 109 N. Y. 170, 16 N. E. 328, that justices of the peace in towns "are the incidents only of the political existence of towns. They are provided and created for the town, and it is quite absurd to say that they continue in office after the town has ceased to exist. While the constitution provides that towns shall elect justices of the peace, whose terms shall continue four years, there is nothing in this provision that requires the indefinite preservation and perpetuation of town organizations, to enable such officers to serve out their terms, or forbids a change of local government, if, in the judgment of the legislature, the welfare and prosperity of the

community requires it." ' The charter (section 1) enacts that the towns in Richmond county, and in other parts of the greater city, shall be annexed to, united and consolidated with, the municipality of New York, which is made the successor corporation in law and in fact of the towns. It is not necessary to decide that this legislated the justices of the peace in Richmond county out of office, although it seems to have been the purpose of section 1384 to continue the justices of the peace in the performance of their duties and powers only until December 31, 1897. But it is sufficient to say that, as the towns in Richmond county were united with and succeeded by the corporation of the greater city, such towns were in fact abolished, and the offices of the justices of the peace in such towns would seem to have been abolished with them. The status of these justices, however, does not necessarily arise on this appeal, and I only refer to it as showing that the legislature conferred upon the municipal court all the powers of such justices, and that no injury to the public interests has resulted from the abolition of the towns and the creation of the new court.

It is apparently conceded by the appellant's counsel that the legislature had the right to create a new court within certain limitations, and that, if the municipal court is a new court with such limitations, the legislature had the right to provide for the appointment of the seven additional justices thereof by the local authorities. It is to be observed that the argument of the counsel for appellant proceeds upon the use of the words "continued, consolidated, and reorganized," in section 1351. We must therefore seek for the reason of such use. It is decided in this department, in the case of Petterson v. Welles, 1 App. Div. 8, 36 N. Y. Supp. 1009, that a justice of the peace in the city of Brooklyn is a justice of a "local inferior court," within the meaning of article 6 of section 18 of the amended constitution. In People v. Howland, 155 N. Y. 270, 49 N. E. 775, it was held that the office of justice of the peace is a constitutional office, and therefore cannot be abolished by the legislature, either directly or indirectly, so long as the town exists; that the constitution does not prescribe the duties and powers of justices of the peace in towns, but leaves that to be done by general laws. The Greater New York charter neither legislates any justice of the peace or district court justice out of office, nor abridges their terms of office, but continues them, and extends their powers and jurisdiction. It had power so to do. With this purpose these officers were transferred into the new court created by the act. Such transfer worked them no injury, and it was clearly within the power of the legislature to take such action.

We come now to the question whether the municipal court is in fact a new court. It is easily differentiated from any of the courts referred to, and, indeed, from any court previously existing. The jurisdiction of district and justices' courts was confined to cases where process was served within their respective cities or towns. The jurisdiction of the municipal court extends over three counties in whole, and partly over two others into any part of which its process runs. The jurisdiction of the district courts and of the justices' courts in Brooklyn was limited to cases amounting to $250, and that of justices in the towns to $200. The municipal court has jurisdiction .

in cases involving amounts up to $500.   The municipal court has jurisdiction in certain actions against executors and administrators, and in certain actions growing out of frauds, and upon bonds and judgments.   None of the courts in question possessed any such jurisdiction.   In addition to this, the new court is given all the civil jurisdiction which the district courts or justices' courts possessed.   In certain cases defendant may demand a jury of 12 instead of 6 persons, as was the case in the other courts.   The jurisdiction of the justices under the old system was confined to their several districts or towns. The justices of the municipal court form a board, with a president and secretary, and such board has power to make certain rules and regulations; and the justices, including the district justices and justices of the peace, may hold sessions of the new court in any part of the greater city.   Surely, upon such a statement it is easy to predicate that the municipal court is a new court, entirely distinct and different from any of the former courts, since it has other and greater powers and jurisdiction, and its justices have greater authority, than was possessed by all of the former courts combined.   The legislature, by virtue of article 6, §§ 17, 18, of the constitution, had power to create such a new court, provided it was made a local inferior court not of record.   This we hold to be the character of the municipal court. It follows, also, that the legislature had the power to create additional judges of the new court, and to confer upon the "local authorities" of the greater city the power of appointment.   It could determine the length of their term, the time and manner of the election of their successors, and the duration of the terms of office of such successors; and when the legislature enacted that the justices appointed by the mayor should hold office until the end of 1899, and that their successors should be elected at, and only at, the general election of 1899, it was acting easily within its powers.

It does not seem to be controverted that under section 20 of the public officers' law a vacancy existed in the office of the seven additional justices, as in the language of that section either "a new office or an additional incumbent of an existing office" was created.

The constitution (article 10, § 5), provides:

"The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy."

But this section must be construed in connection with article 12, § 3, which provides:

"All elections of city officers including supervisors and judicial officers of inferior local courts, elected in any city or part of a city, and of county officers elected in the counties of New York and Kings, and in all counties whose boundaries are the same as those of a city, except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer shall expire at the end of an odd-numbered year.   The terms of office of all such officers elected before the first day of January, one thousand eight hundred and ninety-five, whose successors have not then been elected, which under existing laws would expire with an even-numbered year, or in an odd-numbered year and before the end thereof, are extended to and including the last day of

December next following the time when such terms would otherwise expire; the terms of office of all such officers, which under existing laws would expire in an even-numbered year, and before the end thereof, are abridged so as to expire at the end of the preceding year. This section shall not apply to any city of the third class, or to elections of any judicial officer, except judges and justices of inferior local courts."

One provision is as controlling as the other, and it is a familiar rule that they must, if possible, be so construed that both shall stand. It is clear that the scheme of the constitution was to provide for the election of certain officers, including justices of inferior courts, in the odd-numbered years. To issue a writ compelling the election officers to publish a notice of the election of additional justices of the municipal court in the current year would be a clear disobedience of the mandate of article 12, § 3. In addition to which it may be said that there is no legislative provision for an election of these officers in 1898. There is provision for such an election in 1899. In People v. Bull, 46 N. Y. 57, the court was construing the constitution of 1846, which contained a provision that "all judicial officers of cities and villages and all such judicial officers as may be created therein by law shall be elected at such times and in such manner as the legislature may direct," and held that such "election must have been at such times and in such manner as the legislature might direct. It was as essential that he should be elected at the time and in the manner directed by the legislature as that he should be elected. An election at a different time, or in a different manner, was as invalid as a taking of the office otherwise than by election." It is not even necessary, for the purpose of reaching our conclusion, to have decided, as we have done, that the seven additional justices were lawfully appointed, and this whether the act created new officers or additional incumbents of an existing office. We are clearly of the opinion that the municipal court of the city of New York, into which were incorporated the district courts of the former city of New York, and the justices' courts of the former city of Brooklyn and of towns in the counties named in the act, was intended by the legislature to be, and is, a new inferior local court, not of record, and is not a mere continuance of the old courts. The name of the court does not determine the question. The legislature had the right to create such new court, and to provide for the method of appointing or electing its justices, for the continuance of their terms of office, and for the time of the election of their successors. The legislature provided for the appointment of the additional justices by the mayor, and for the election of their successors only at the general election of 1899, and they cannot be elected at the election of 1898.

The decision of the court of appeals in the Bull Case alone was sufficient authority for the order of the special term refusing to grant a peremptory writ of mandamus, and that order is affirmed, with $10 costs and disbursements. All concur.

CULLEN, J. (concurring). I think that the municipal court of the city of New York, as constituted by the charter of that city (sections 1350–1384), is a new inferior local court, within the meaning of section 18 of article 6 of the amended constitution, and that the judges

of that court, whose appointments or elections are provided for by the charter, are not justices of the peace or district court justices, within the meaning of section 17 of the same article. A principal, if not the dominant, distinction between the constitutional office of justices of the peace and that of a judge of a local court established by the legislature, even when such judge is called a justice of the peace, is the territorial restriction which limits the jurisdiction of the latter court. Brandon v. Avery, 22 N. Y. 469; Geraty v. Reid, 78 N. Y. 64; People v. Terry, 108 N. Y. 1, 14 N. E. 815. Under section 1368 the process of the municipal court can be served only within the limits of the city. Whether this provision, so far as it authorizes the process of the court sitting in one county to run into another county, is valid, it is unnecessary to determine. The whole of the county of Queens is not within the limits of the new city of New York. Under the charter the process of the municipal court cannot be served in any part of the county lying without the city limits. Therefore, at least in the county of Queens, the jurisdiction of the municipal court is more circumscribed than that of a justice of the peace in such county. The main argument of the appellant is that the municipal court must be considered as a court of a justice of the peace or a district court, because district court judges in the old city of New York and justices of the peace in the city of Brooklyn are continued in office as judges of the municipal court, and it is insisted that the legislature could not transfer a judge from one court to another; in other words, that such transfer would be a legislative appointment to a new office. I think that the main proposition on which this argument rests—the inability of the legislature to provide that a new court shall be held by the incumbent of another judicial office—is not sound. Formerly courts of oyer and terminer were held by a justice of the supreme court and such local judicial officers as the legislature directed, the only constitutional limitation being that the court must be presided over by a justice of the supreme court. Smith v. People, 47 N. Y. 330. But, if we assume that the proposition is true, it is not decisive of the character of the municipal court. This court held in Petterson v. Welles, 1 App. Div. 8, 36 N. Y. Supp. 1009, that the courts of justices of the peace in the city of Brooklyn were not the constitutional courts enumerated in section 17 of article 6 of the constitution, but local inferior courts, under section 18 of the same article. If it is not in the power of the legislature to transfer the justices of the district courts in New York to a new local court, it would seem equally beyond the power of the legislature to transform the justices of the peace in Brooklyn into constitutional justices of the peace or district court justices. If, therefore, we assume the correctness of the relator's legal proposition, it follows that to uphold the validity of the charter provisions creating the municipal court it would be necessary to decide that the court has not a uniform character, but is a district court in the old city of New York, and an inferior local court in the city of Brooklyn. If this is so, there is no difficulty in holding, so far as Richmond county (where the case of this relator arises) is concerned, that the court is a new court. Being such, its judges may be elected or appointed by the local authorities, as the

legislature directs; and the legislature may direct that for one period
the judges be appointed, and for another period be elected.     People
v. Comstock, 78 N. Y. 356.    Second, whatever may be held concern-
ing the question hitherto discussed, I do not see how this case can be
distinguished from that of People v. Bull, 46 N. Y. 57.    Under the
authority of that case, even if the provision that the mayor's appointee
shall hold the office of justice for the year 1899 is void, that fact does
not authorize an election to be held before the time prescribed by
statute.

The order should be affirmed.