(40 Misc. Rep. 485.)

PEOPLE ex rel. HYDE et al. v. POTTER, Town Clerk.

(Supreme Court, Special Term, St. Lawrence County. April, 1903.)

1. TOWNS—VACANCY IN OFFICE—APPOINTMENT.

　　Where a vacancy occurs in the office of a town supervisor by failure of the person elected to qualify, the vacancy must be filled by appointment by the justices of the peace of the town and the town clerk, under Laws 1890, p. 1211, c. 569, and not by an election held at a special town meeting.

2. SAME—ELECTION—REPEAL OF STATUTE.

Town Law, Laws 1890, p. 1243, c. 569, § 240, repeals the statutes enumerated in the last column of the annexed schedule of repealed laws, and provides that such repeal shall include all laws amendatory of the laws thereby repealed. *Held*, that Laws 1890, p. 467, c. 252, providing for the filling of vacancies in town offices by election, was thereby repealed.

8. STATUTORY CONSTRUCTION ACT.

Statutory Construction Act, Laws 1892, p. 1492, c. 677, relates to future legislation, or refers to laws actually then in existence, and was not intended to revive laws which had been repealed two years previously thereto.

Application by the people, on the relation of Judson A. Hyde and others, for writ of mandamus to Herbert J. Potter, town clerk. Denied.

H. Benjamin Chase and B. S. O'Neill, for relators.
J. C. Crapser and G. A. Chase, for respondent.

JOHN M. KELLOGG, J. This is an application for a peremptory mandamus to compel the town clerk to call a special town meeting for the election of a supervisor in place of Samuel S. Danforth, who was duly elected at the recent town meeting, but failed to qualify. The relators proceed upon the theory that chapter 252, p. 467, of the Laws of 1890, which amends section 34 of article 3 of title 3 of chapter 11 of part 1 of the Revised Statutes, is in force. Immediately after the service of the motion papers, all of the justices of the peace and the town clerk of the town met, and appointed John C. Crapser as supervisor, and he duly qualified. The town law (Laws 1890, p. 1211, c. 569), which was passed June 7, 1890, and went into effect May 1, 1891, makes specific provisions for the appointment, and in no way refers to a special election to fill a vacancy. Chapter 252, p. 467, of the Laws of 1890, was passed May 1, 1890, and became a law immediately, and amends the provisions of the Revised Statutes providing for a special election in such cases, making it apply to some other offices; but, so far as this case is concerned, practically leaving the provision the same as the original Revised Statutes. It is therefore apparent that up to May 1, 1891, a vacancy in the office of supervisor could only be filled by special election. It seems plain that chapter 252, p. 467, of the Laws of 1890, was repealed by the town law, but, if not expressly repealed, it practically was deprived of any further force by that law and its amendments, so far at least as this case is concerned. Chapter 252, p. 467, of 1890, expressly provides that it shall not apply to the filling of vacancies in the office of justices of the peace, or of any other town office, where special provision is made by law for the mode and manner of filling the same. The town law, at section 234, as amended by chapter 387, p. 789, of the Laws of 1893, expressly provides that, in case any town officer shall fail to file the oath of office and bond within the time required by law, "a vacancy shall thereupon be created, which shall be filled by appointment in the manner prescribed by this article," and section 232, as amended by the same law (chapter 481 of 1893), and section 65, as amended by the Laws of 1897, provide that any vacancy in a town office may be filled by appointment. If any

question could exist whether the provisions of sections 232 and 65 are permissive only, and not mandatory, and therefore would not, by implication, necessarily repeal chapter 252, p. 467, of the Laws of 1890, it is clear that the provision of section 234 is a special provision of law for the filling of a vacancy in a town office caused by a refusal to qualify, and is mandatory, and precludes the idea of filling the vacancy in any other manner. So that, if chapter 252, p. 467, of 1890, is not expressly repealed, the terms of that statute and the provisions of section 234 of the town law require that this vacancy be filled by appointment.

But it is clear that the town law expressly repealed chapter 252, p. 467, of the Laws of 1890. Section 240 of the town law (Laws 1890, p. 1243, c. 569), repeals the statutes enumerated in the last column of the annexed schedule of repealed laws, and provides that such repeal "shall include all laws amendatory of the laws hereby repealed." All of title 3 of chapter 2 of part 1, Rev. St., is mentioned in the schedule as repealed, and it is clear that at the time the repealing statute was passed chapter 252 of 1890 was then a part of the title of the Revised Statutes which was thus repealed. Standing by itself, it cannot be questioned that the town law expressly repeals this statute upon which the relators rely.

It is claimed, however, that section 33 of the statutory construction law (Laws 1892, p. 1492, c. 677), read in connection with the town law, prevents the repealing clause from having the effect stated. That section provides, in referring to general laws, that "an amendatory law passed at such session or at any subsequent session begun before any such chapter takes effect, shall not be deemed repealed, unless specifically designated in the repealing schedule of such chapter." There seems to be three answers to this contention.

First. The provision of the town law that the repeal shall include all laws amendatory of the laws thereby repealed has the same force and effect as if it occurred in the repealing schedule itself so as to read, "All of article 3 of chapter 2 of part 1 of the Revised Statutes, and all laws amendatory thereof, are hereby repealed." Such reading would clearly make the law one specifically designated in the repealing schedule. It can have no less effect from the fact that it is contained in the section which refers to the schedule as containing the repealed laws than if expressly written in words in the schedule itself.

Second. We have seen that by itself the town law expressly repealed chapter 252, p. 467, of the Laws of 1890. It cannot be that that law remained repealed for a year, and then was revived by the statutory construction law, which did not become a law until 1892, two years after the town law was passed, and a year after it went into effect. It is sufficient to consider the statutory construction law as relating to future legislation, or as referring to laws actually then in existence, without assuming that it was intended to revive laws which had been repealed two years previously. People ex rel. City of Buffalo v. N. Y. C. & H. R. R. R. Co., 156 N. Y. 570, 51 N. E. 312.

Third. Section 1 of the statutory construction law says that it "is applicable to every statute unless its general object, or the context

of the language construed, or other provisions of law, indicate that a different meaning or application was intended from that required to be given by this law." It is clear, therefore, that section 1 prevents section 33 of the statutory construction law from applying to the repealed clause contained in section 240 of the town law, for the reason that section 240 of the town law indicates clearly that it was intended to repeal every amendment which had been made to the title of the Revised Statutes in question. The proper construction of sections 1 and 33 of the statutory construction law, read together, as they must be, is that an amendatory law, passed at the same session at which a general law is passed, shall not be deemed repealed unless specifically designated in the schedule, or unless the general object, or the text of the language, or other provision of the general law indicate that such repeal was intended. Such a construction shows clearly that the statutory construction law does not prevent the repealing clause in the town law from repealing the statute in question.

But the relators refer to People ex rel. Howard v. Supervisors of Erie County, 42 App. Div. 510, 59 N. Y. Supp. 476, and contend that the provisions of the town law for filling of vacancies are in violation of sections 5 and 6 of article 10 of the state Constitution. In the Howard Case the question arose under the charter of the city of Buffalo and section 3 of article 12 of the Constitution. The Constitution provides that supervisors in the city shall be elected every odd year, except to fill vacancies, and where a vacancy occurred during the first year of the supervisor's term the court held that the appointee to fill the vacancy only held until the January following, and that under this clause of the Constitution a supervisor was properly elected at the election following the vacancy, being an even year. And, while the court seems to place its decision somewhat upon the provisions of sections 5 and 6 of article 10 of the Constitution, that case cannot be deemed controlling in this matter. Matter of Schultes, 33 App. Div. 524, 54 N. Y. Supp. 34, seems to take a somewhat different view. In the Schultes Case, while it is not entirely clear that the court decided that the above sections of the Constitution did not apply, and that the appointee legally continued in the office after January 1st, it squarely held that an election could not be had in the even year because no statute authorized it, and it denied a mandamus seeking to compel an amendment of the election notice so as to include the office as one to be filled at the election. This is directly contrary to the only question decided in the Howard Case, where it is held that an officer placed upon the ticket and elected in the even year was entitled to the office as against the appointee. In People ex rel. Kehoe v. Fitchie, 76 Hun, 82, 28 N. Y. Supp. 600, it was held that the restrictions of sections 5 and 6 of article 10 of the Constitution did not apply to the office of ward supervisor, citing People ex rel. Hatfield v. Comstock, 78 N. Y. 356, holding that those sections did not refer to the office of superintendent of the poor, but only to those offices which in terms were made elective by the Constitution, and not those governed by section 2 of article 10. Neither is it clear that the succeeding first annual election mentioned in section 5 of the Constitution referred to means, as applicable to this

town, the succeeding general election at which a town officer cannot be elected, rather than the succeeding annual town election at which one can be elected. Since the adoption of the new Constitution, the town election has been made biennial, instead of annual, but that does not necessarily change the construction of this section. The question as to the effect of these constitutional provisions, or for how long .the appointment continues, is not before the court, and will not be considered further, as it has no decisive bearing upon the question whether chapter 252, p. 467, of the Laws of 1890, was repealed by the town law or not. And perhaps the question is not of the most serious practical importance, for, if the appointee's term ends January 1st, it is probable he would continue to discharge the duties of the office until his successor qualifies, as is contemplated by the town law and the public officers law, or the proper town authorities would again fill the vacancy until a supervisor is elected at the next biennial town meeting. The motion is denied, with $10 costs.

Motion denied, with $10 costs.