MARKLAND v. SCULLY, City Clerk, et al.

(Supreme Court, Appellate Division, Second Department.   September 25, 1911.)

1. JUDGES (§ 8*)—ELECTION—JUSTICES OF MUNICIPAL COURT.
    Const. art. 10, § 5, provides that, in case of elective officers, no person appointed to fill a vacancy shall hold his office beyond the commencement of the political year next succeeding the first annual election after the vacancy occurs.   Article 6, §§ 4, 8, 15, provide specially for filling vacancies in the offices of justice of the Supreme Court, judges of the Court of Appeals, and in County and Surrogates' Courts, respectively, and further provide that a vacancy, occurring except by expiration of the term, shall be filled for a full term at the general election happening not less than three months after such vacancy occurs.   Held, in view of the history of the provisions, that article 10, § 5, applied to all judicial offices which were necessarily elective, and, since the offices of justices of the Municipal Court were required to be filled by election, applied to such officers, making unconstitutional Greater New York Charter (Laws 1901, c. 466, § 1357, as amended by Laws 1907, c. 603, § 3), by adding the quoted words, providing that the vacancies occurring in the offices of justices of the Municipal Court "otherwise than by expiration of term" shall be filled at the next general election "in an odd-numbered year happening not less than three months after such vacancy occurs, for a full term" commencing on the 1st day of January next after said election.

    [Ed. Note.—For other cases, see Judges, Dec. Dig. § 8.*]

2. JUDGES (§ 3*)—ELECTION OF JUDGES—JUSTICES OF MUNICIPAL COURT—NECESSITY OF ELECTION—"DISTRICT COURT JUSTICES."
    Const. art. 6, § 17, first adopted in 1869, provides that the electors of towns shall elect justices of the peace at the annual town meeting, or at such other time as the Legislature directs, and that "justices of the peace and District Court justices may be elected in the different cities" in such a manner and for such terms as are prescribed by law, and that all other judicial officers in cities, whose election or appointment is not otherwise provided for, shall be chosen by the electors of such cities or appointed by some local authorities.   Held, that section 17 required the offices of justice of the peace and District Court justice to be filled by election, in case those offices were established in cities, and the term "District Court justices" included justices of the Municipal Court, in view of the history

of the courts in New York City and the former city of Brooklyn, for which the Municipal Court was substituted.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 3, p. 2138.]

3. JUDGES (§ 3*)—ELECTION—JUSTICES OF MUNICIPAL COURT.

While Greater New York Charter (Laws 1901, c. 466) § 1350, providing that after the passage of the act no person shall be elected to the office of District Court justice in any part of the territory included within the city of New York, could be construed to mean that the title to the office should not be continued, yet, if construed to mean that no District Court justice could thereafter be elected within New York City, it conflicted with Const. art. 6, § 17, authorizing District Court justices to be elected in the different cities of the state.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 3.*]

Appeal from Special Term, Kings County.

In the matter of the application of William H. Markland for a peremptory writ of mandamus to Patrick J. Scully, City Clerk of New York, and others. From an order granting the application, defendants appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Patrick E. Callahan (James D. Bell, on the brief), for appellants. Arnon L. Squiers, for respondent.

BURR, J. In 1907 the Revised Charter of the City of New York was amended to read as follows:

"Vacancies occurring in the office of justice of said court [the Municipal Court of the City of New York] *otherwise than by expiration of term* shall be filled at the next general election, *in an odd numbered year happening not less than three months after such vacancy occurs, for a full term* commencing on the first day of January next after said election; and the mayor shall appoint some proper person to fill such vacancy in the interim within twenty days after the same occurs." Laws 1907, c. 603, § 3.

The words in italics indicate the extent of such amendment.

George Fielder, who had been elected a justice of the Municipal Court for the Sixth district of the borough of Brooklyn, died August 8, 1911. This was less than three months prior to the date fixed for the general election in this year. If the amendment of 1907, above referred to, established a valid condition precedent, the vacancy resulting from his death may not be filled at such general election, and this application should be denied.

The general provision of the Constitution relative to filling vacancies is that:

"In case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy." Const. art. 10, § 5.

The learned counsel for appellants contends that this section has no application to judicial officers. It is true that in the judiciary article of the Constitution special provision is made with regard to the filling

of vacancies in the office of justice of the Supreme Court (article 6, § 4), in the Court of Appeals (Id. § 8), and in the County and Surrogates' Courts (Id. § 15). But the history of the adoption of that portion of those sections which contains the clause postponing elections to fill vacancies in these judicial offices from the next general election to the "next general election occurring not less than three months after such vacancy occurs" clearly demonstrates that prior thereto the section above referred to did apply to judicial offices, and that it was deemed prudent to resort to a constitutional amendment with reference to the specific offices above mentioned to prevent such application. In the Constitution of 1846 the general provision relative to filling vacancies in elective offices was identical in language with that of the present Constitution. Const. 1846, art. 10, § 5. The only provision therein contained specially relating to judicial offices was to the effect that:

"In case the office of any judge of the Court of Appeals or justice of the Supreme Court shall become vacant before the expiration of the regular term for which he was elected, the vacancy may be filled by appointment by the Governor until it shall be supplied at the next general election of judges, when it shall be filled by election, for the residue of the unexpired term." Const. 1846, art. 6, § 13.

On October 23, 1855, Robert H. Morris, a justice of the Supreme Court, died. The general election in that year occurred on November 6th. Under the election law then in force (Laws 1842, c. 130, as amended by Laws 1847, c. 240, §§ 3, 7), it was not possible to give the notice therein provided for of an election to fill such vacancy, and no such notice was given. At the general election, however, ballots were cast for various candidates for the office of justice of the Supreme Court, of which Henry E. Davies received the greatest number. On December 3, 1855, the Governor appointed Edward P. Cowles to fill the vacancy caused by the death of Morris. Cowles took possession of the office, and declined to yield the same, contending that there could be no "general election of judges" to fill that vacancy at the election of 1855, since there was not time to give the statutory notice thereof. In quo warranto proceedings, brought by Davies, he was held to be entitled to the office. Referring to the election law, which provided that "all vacancies" (with certain exceptions not necessary now to notice) "should be supplied at the general election next succeeding the happening thereof" (Id. § 6), the Court of Appeals said:

"By this enactment the Legislature have exercised the power which it is claimed they possess, under article 10, § 5, of the Constitution, to provide for filling vacancies in office. It applies to justices of the Supreme Court and to judges of the Court of Appeals." People ex rel. Davis v. Cowles, 13 N. Y. 350.

The possible danger that a vacancy in a judicial office might be filled by the votes of a comparatively few electors, by reason of the fact that the existence of a vacancy was not generally known because of the late occurrence thereof, among other reasons, prompted the constitutional convention of 1867 to recommend the three months rule, which was included in the judiciary article adopted in 1869 and con-

tinued in the Constitution of 1894. 1 Lincoln's Constitutional History of New York, 254.

[1] Our attention has been called to no other provision of the Constitution by which direction is given for filling vacancies occurring in the office of justices of the peace of towns. This section, therefore, applies to them, and if there is any judicial officer in the state, other than those above specified, whose office is necessarily elective, said section must also apply to vacancies occurring therein. If, then, the office of justice of the Municipal Court is by the terms of the Constitution such an office, the vacancy which arose at Justice Fielder's death must be filled at the ensuing election, and the clause of the charter as amended, which seeks to postpone such election, is invalid.

[2] While electors of towns are *required* to elect justices of the peace at their annual town meeting, or at such other time and in such manner as the Legislature may direct, "justices of the peace and District Court justices *may* be elected in the different cities of this state in such manner and with such powers and for such terms respectively as are or shall be prescribed by law; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities or appointed by some local authorities thereof." Const. art. 6, § 17. We agree with the learned court at Special Term that the fair construction of the first clause of this section is that, while the Legislature may determine whether cities shall or shall not have justices of the peace or District Court justices, if they determine in favor of the existence of these officers, the offices must be filled by election.

The crucial question in this case, therefore, is: Does the office of justice of the Municipal Court of the City of New York fall within that class of offices described as "justices of the peace and District Court justices," or within that class described as "other judicial officers in cities"?

The section in question first became effective as a constitutional enactment by the adoption in 1869 of the judiciary article proposed by the constitutional convention of 1867. The Constitution of 1846 provided that:

"All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the Legislature may direct." Const. 1846, art. 6, § 18.

In the judiciary article of 1869 the word "shall" appeared before the words "be elected," instead of the word "may." In determining who were intended by the expression "justices of the peace and District Court justices," it may be important to consider the existing judicial situation, at least in the former cities of New York and Brooklyn. At that time there existed, and had existed for many years, in the city of New York, a local inferior court, statutory in its character. Laws 1848, c. 153. This act provided that the city of New York should be divided into six judicial districts, in each of which there was thereby established a court, to be called the "Justices' Court of the City of New York." Id. § 1. The act prescribed what wards of the city should be comprised in each of the said districts, and further provided that in

each of the districts thereby created there should be elected by the electors thereof, having the necessary qualifications required of a voter at any general election, a justice to hold the court in said district. Id. § 2. Each court was to be held at a place within the district designated and provided for by the common council of the city of New York, and no such court or any justice thereof was authorized to hear or determine any cause or matter at any place other than the usual courtroom of said court. Id. § 6. By an act passed at the same session of the Legislature, the Justices' Courts of the City of New York, established by the act just referred to, were designated as "Assistant Justices' Courts in the City of New York." Laws 1848, c. 276. By a subsequent act it was provided that the Justices' Courts in the City of New York should thereafter be styled the "District Courts in the City of New York." Laws 1852, c. 324.

In the former city of Brooklyn there was also a statutory court established in 1849. Laws 1849, c. 125. That act among other things provided that the common council of the city of Brooklyn were authorized from time to time to divide the said city into two or more districts, for each of which districts there should be elected by the electors of said city, at the next charter election to be held in said city, and every four years thereafter, a justice of the peace, who should have the same jurisdiction in said city that justices of towns have by law, with certain restrictions not important here to notice. That act was amended (Laws 1850, c. 102), but not in any respect important here to consider.

The jurisdiction of these latter courts was considered in the case of Geraty v. Reid, 78 N. Y. 64, and Petterson v. Welles, 1 App. Div. 8, 36 N. Y. Supp. 1009. In the former case it was held that the jurisdiction of justices of the peace, elected in accordance with the said act, was restricted to the limits of the city, and in the latter case that said justice of the peace was not a constitutional justice of the peace, like the justice of the peace in a town, but was a judge of an inferior local court, whose term of office might be abridged, or the office itself entirely abolished.

We find, then, when the constitutional amendment was adopted in 1869, there existed in the city of New York courts known as "District Courts," and courts existing in the city of Brooklyn presided over by officers known as "justices of the peace." The ordinary construction of language would constrain us to hold that these officers were the officers intended by the words employed in the Constitution as District Court justices and justices of the peace. Whether in other cities there were also courts which answered the description of District Courts, and officers designated as "justices of the peace," statutory in character, is not necessary for us to consider. The language of the Constitution certainly applied to the presiding officers of the two courts referred to. Subsequently the city of Brooklyn was divided into three judicial districts (Laws 1888, c. 583, tit. 21, § 1), the presiding officers of which were known as "justices of the peace," and the actions in these courts, except in case of actions brought by nonresidents, and excepting those brought in the name of the city for violations of the

charter or ordinances, must be brought in the judicial district in which one of the plaintiffs or one of the defendants resides, or in an adjoining district. Id. § 6, as amended by Laws 1895, c. 637.

When the various municipalities within the territory of the Greater New York were consolidated, by the original charter of this consolidated city, it was among other things provided that from and after midnight of the 31st day of January, 1898, the justices' courts and the office of justice of the peace in the cities of Brooklyn and Long Island City should be abolished, and all jurisdiction, power, authority, and duty theretofore vested in said courts and justices of the peace should cease and determine, except as provided in the next section and section 1372 of said act, and *from and after the passage of said act no person should be elected to the office of District Court justice or justice of the peace in any portion of the territory included within the city of New York as constituted by this act.* Laws 1897, c. 378, § 1350. By the succeeding section it was provided that:

"On and after the first day of January, 1898, the District Courts of the city of New York, and the Justices' Courts of the First, Second and Third districts of the city of Brooklyn are hereby continued, consolidated and reorganized, under the name of the Municipal Court of the City of New York, which said court shall be a local civil court within the city of New York as constituted by this act, and shall not be a court of record or have any equity jurisdiction, but shall have the jurisdiction, powers, duties and organization hereinafter prescribed." Laws 1897, c. 378, § 1351..

The character of this Municipal Court has been several times considered. The charter of 1897 provided that the mayor of the city of New York should, on or before January 20, 1898, appoint seven persons as justices of the Municipal Court, in addition to those transferred to said court from the District Courts in the city of New York and the courts of justices of the peace in the city of Brooklyn, who should hold office until the 31st day of December, 1899. Id. § 1352, subd. 4. Two of these appointments were to be made from the borough of Richmond. The mayor made such appointments. In the fall of 1898 an application was made, similar to that now under consideration, to compel the county clerk of Richmond county to give notice that, at the general election to be held in that year, among other offices to be filled was that of justice of the Municipal Court for the First and Second districts of the borough of Richmond. This was upon the ground that the mayor's power of appointment was controlled by article 10, § 5, of the Constitution, and that such appointment would expire in consequence thereof at the close of that political year, and that the vacancies resulting therefrom must be filled at the general election then about to be held. The application was denied by this court, upon the ground that, at least so far as the justices presiding over said court were concerned, the court was a new inferior court of local jurisdiction, and that the justices thereof might be elected or appointed at such times and in such manner as the Legislature might direct. Constitution, art. 6, § 18; Matter of Schultes, 33 App. Div. 524, 54 N. Y. Supp. 34.

Subsequently the character of this court, so far as its jurisdiction was concerned, was considered by the Court of Appeals in two reported cases: Worthington v. London G. & A. Co., 164 N. Y. 81, 58 N. E. 102, and Routenberg v. Schweitzer, 165 N. Y. 175, 58 N. E. 880. In the first case, decided in October, 1900, the question under consideration· was the validity of that provision of the charter which gave the Municipal Court jurisdiction over "a foreign corporation having an office in the city of New York." Section 1364. It was contended that if the Municipal Court of the City of New York is a new inferior or local court, as was intimated in the Schultes Case, such provision was invalid by reason of the provision of the Constitution that the Legislature should not confer upon such court "any equity jurisdiction, or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article." Const. art. 6, § 18. The jurisdiction of County Courts was limited, among other things, to actions where the defendant resides within the county. Id. § 14. The court, speaking through Judge E. B. Bartlett, held that:

"The general scheme of the charter was to continue in existence the old city of New York and to a great extent its municipal and judicial machinery, and to unite with it the outlying territory, which aggregation on a day named would become the new city of New York. '* * * The old city of New York and the city of Brooklyn were possessed of local courts that were to be the basis of a system for the new city."

After referring to the provisions of sections 1350 and 1351 of the charter above quoted, he adds:

"We are of opinion that the District Courts of the old city of New York and the Justices' Courts in the three districts named in the former city of Brooklyn were not abolished, but were continued, consolidated, and reorganized in a new court. * * * The scheme of the charter as thus briefly outlined leads us to the conclusion that the Municipal Court of the City of New York is not a new inferior local court, but old local tribunals continued, consolidated and reorganized under a new name and adapted to the needs of the greater city."

The learned judge further expresses his opinion that, even if it were a new local court, the provision conferring upon it jurisdiction of a foreign corporation having an office in the city of New York would not violate section 18 of article 6 of the Constitution, since the limitation thereby imposed upon the power of the Legislature to confer jurisdiction upon future inferior local courts relates to the jurisdiction as to subject-matter, and not as to territory, nonresident parties defendant, or foreign corporations. The entire court concurred in the decision; Chief Judge Parker upon the first ground stated in the opinion, and Judge Haight in a separate memorandum.

In Routenberg v. Schweitzer, supra, the Court of Appeals again considered the question of the jurisdiction of the Municipal Court over a nonresident natural person having a place of business in the city, and again declared that the Municipal Court is not a new court, but instead a continuation of the District Courts of the old city of New York and of the Justices' Courts of the First, Second, and Third districts of the old city of Brooklyn under a new name.

It is not necessary for us to attempt to reconcile these decisions, if,

indeed, it is possible for us to do so, for the reason that the constitutional provision relates to justices of District Courts in all cities, and the fair construction of that language would be to refer it, not alone to courts bearing that title, but to courts which were of the character of District Courts. Where the entire territory of a city is divided up into districts for the purposes of local and inferior courts, and judges are elected or appointed for these various districts, such courts might well be termed "District Courts," and the judges presiding over them properly described as "District Court justices." Unless we give to the language employed in the section of the Constitution under consideration this construction, if a court which was both district in character and district in name should change its name, although the jurisdiction of the court remained precisely the same, the constitutional provision would no longer apply. This would be sacrificing the spirit and purpose of the law to its letter, and the mere name of a court or office is not necessarily controlling. People ex rel. Sinkler v. Terry, 108 N. Y. 1, 14 N. E. 815.

We think, therefore, that the justices of the Municipal Court of the City of New York are within the meaning of the Constitution District Court justices. It may be urged that the effect of this decision will be to hold that the appointment of the seven additional justices made in 1898 was invalid, because in violation of this section of the Constitution. Whether this be true or not, a far more serious result would follow from holding that they were not District Court justices. If we should hold that these judges are included in the description "all other judicial officers in cities whose election or appointment is not otherwise provided for in this article," then the entire scheme of the charter for dividing the city into districts and electing judges for these various districts by the electors thereof would fail. It would be necessary that these justices should be elected by all the electors of the entire city of New York. People v. Dooley, 69 App. Div. 512, 75 N. Y. Supp. 350, affirmed 171 N. Y. 74, 63 N. E. 815. When that case was before this court, Mr. Justice Bartlett said:

"Again it is contended that if the judgment below is correct the organization of the present Municipal Court in the city of New York is unconstitutional, because the justices are elected in specified districts in the city and exercise their functions in various other districts. So, also, it is suggested that the former system of District Courts in the old city of New York must also on the same principal be deemed to have been unconstitutional. This argument I think overlooks the peculiar provision of the Constitution in regard to District Courts in cities. Since 1846 the Legislature has always had control over the manner in which District Court justices in cities should be elected."

The learned justice then refers to the provisions of the Constitution of 1846 (article 6, § 18), as originally adopted, this article as amended in 1869, and the provisions of section 17 of the Constitution of 1894, which he quotes to the effect that:

"Justices of the peace and District Court justices may be elected in the different cities of this state in such manner, and with such powers, for such terms respectively as are or shall be prescribed by law."

He adds:

"The Legislature, thus possessing within its discretion absolute power as to the manner in which District Court justices might be elected, could provide for their election in districts if it saw fit. The same line of reasoning applies to the justices of the Municipal Court; it having been determined by the Court of Appeals that the Municipal Court of the City of New York, as established by the Greater New York charter, is merely a continuation of the pre-existing District Courts of the same city and the Justices' Courts in the city of Brooklyn. Hence the Legislature could authorize the election of the justices thereof by districts under section 17 of article 6 of the Constitution of 1894 already cited."

In that case he also says that:

"The phrase 'electors of such cities' is a broad one, without qualification or limitation in the clause in which it occurs, and is certainly comprehensive enough to include all the persons entitled to vote within the municipality."

In this opinion Mr. Justice Jenks concurred. Mr. Justice Woodward concurred in the result in a separate opinion, and two of the justices of the court dissented. When this case came before the Court of Appeals, the decision of this court was affirmed. Two opinions were written, one by Judge Werner, in which he held, first, that the Legislature had power to adopt but one method of selecting the officers under consideration in that case, viz., city magistrates. This must be either by election or appointment through the entire city. It could not direct the use of both methods in the same city by enacting that they shall be elected in one portion thereof and appointed in the other. This was the ground suggested by Mr. Justice Woodward in his opinion in this court. But he also held that, if elective, such officers must be chosen, not by the electors of a congressional district or of a borough, but by all the electors of a city, giving the same construction of the last clause of section 17 of article 6 that was given to it by Mr. Justice Bartlett in this court. Judge Cullen wrote a concurring memorandum, in which he said:

"There is no provision in terms as to who shall elect justices of the peace and District Court justices in cities, while it is expressly directed that justices of the peace shall be elected by the electors of the town, and judicial officers in cities other than justices of the peace and District Court justices shall be elected by the electors of the cities in case the offices are filled by election. 'The electors' of the state or of any of its political divisions means all the electors. * * * The Constitution authorizes justices of the peace and District Court justices in cities to be elected in such manner as may be prescribed by law. At the time of the enactment of this constitutional provision (1869) these officers, in the then cities of New York and Brooklyn, were elected by districts. Their courts were local in their character. They were held in the districts, and in many respects their jurisdiction was confined to such districts. * * * I think that the Legislature might create in cities district criminal courts as well as district civil courts, with justices to be elected by the electors of the districts. But in such case the courts must be really district courts; that is to say, courts held for the districts, and the jurisdiction of whose magistrates is in some way limited to, or at least connected with, the districts."

The same learned judge intimates that the City Court of New York is a District Court in a city, within the meaning of this section of the Constitution, and for that reason the election of its judges by the electors residing in the present borough of Manhattan and former city of

New York is valid. If that is so, certainly the Municipal Court of the City of New York is also a District Court.

In his concurring opinion in the Worthington Case, Judge Haight says:

"But it appears to me that the Municipal Court of the City of New York, as it exists, is a District Court within the provisions of section 17, art. 6, of the Constitution. * * * It is true that the court in question is not called in the statute a District Court. Its name is the Municipal Court, but the change in name is immaterial. * * * My conclusion is that the Municipal Court is a District Court within the city of New York, authorized by section 17 of the Constitution referred to, and that it has such powers as the Legislature has or shall hereafter prescribe, and that under the charter of Greater New York it had jurisdiction of this cause of action."

[3] It may be urged that the effect of this decision is to set at naught the concluding sentence of section 1350 of the charter, to the effect that:

"From and after the passage of this act no person shall be elected to the office of District Court justice or justice of the peace in any portion of the territory included within the city of New York as constituted by this act."

We think that we would be justified in construing this language as meaning that the former title to those offices should not be continued. But if the necessary meaning of this portion of the statute is that no District Court justice can be elected within the city of New York, then such provision is in conflict with the provisions of the Constitution above referred to, and the words of the statute must yield.

We think that the order appealed from should be affirmed, without costs. All concur.